IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston

**ELTON E. BRYAN,**

    Petitioner

                                                                                 **Civil Action No. 2:10-cv-01196**

v.

**UNITED STATES OF AMERICA**

    Respondent


**PETITIONER'S *REPLY* TO
THE GOVERNMENT'S RESPONSE TO PETITIONER'S
PETITION FOR A WRIT
OF ERROR CORAM NOBIS**


    Comes now Elton E. Bryan, Petitioner (hereinafter Butch Bryan) and replies to the Government's Response to his Petition for a Writ of Error Coram Nobis.

**I**
*Butch Bryan is a Victim and not a Malefactor*

    Judges, lawyers and legal scholars have long been concerned about the abuses that the federal mail and wire fraud statutes invite. Apparently various outrages by serious evil-doers in the urbanized parts of America have prompted the courts to allow the phrase "scheme or artifice to defraud" to be largely undefined so that true public outrages may be prosecuted. But, given that virtually anything a person does involves use of either a wire or

the mails, any political activity that an assistant U. S. attorney doesn't like, or any person an assistant U. S. attorney doesn't like, or any public agenda an assistant U. S. attorney doesn't like can conceivably prompt a prosecution for mail and/or wire fraud. Here is Judge Frank Easterbrook of the 7th Circuit explaining the dangerous lack of definition in the statutes:

> "A mails B an invitation to a surprise party for their mutual friend C. B drives his car to the place named in the invitation. But there is no party; the address is a vacant lot; B is the butt of a joke. The invitation came by post; the cost of gasoline means that B is out of pocket. The prosecutor said [at oral argument] that this indeed violates Sec. 1314, but that his office pledges to use prosecutorial discretion wisely. Many people will find this position unnerving (what if the prosecutor's policy changes, or A is politically unpopular and the prosecutor is looking for a way to nail him?)... [T]he idea that practical jokes are federal felonies would make a joke of the Supreme Court's assurance that sec. 1314 does not cover the waterfront of deceit."

*United States v. Walters*, 997 F.2d 1219 (7th Cir.,1993) at 1224.

What, then, did Butch Bryan actually do? Perhaps the answer is that he had less than a solicitous regard for the technicalities of government contracting and insufficient experience to rig things in a foolproof way. The evidence does not contradict the proposition that Butch believed that Falgren Martin and the Arnold Agency were equally good, so it was best to leave the contract with people who had a proven track record of success. TR Vol. VI, pp. 39-41. Falgren Martin had held the contract since the inception of the Lottery and had done a good job. Furthermore, it was Governor Arch A. Moore's administration that had first given Falgren Martin the contract. Nothing in the Record shows any motivation for awarding the contract to Falgren Martin other than a desire to stay with an entity that had a

good track record of promoting the lottery.[1]

Next Butch is accused of favoring one equipment provider over another <u>because the favored provider would build a factory in West Virginia</u>! That is not a "scheme or artifice to defraud;" that is simply an effort to provide good government! Government, after all, is an art and not a science: Whenever normal government operations can be structured in such as way as to exact an additional <u>public</u> benefit from routine operations, the average citizen applauds such actions. Nowhere in the Record of this case is there <u>any</u> evidence that Butch Bryan <u>ever</u> took any bribe or kickback or benefitted personally in any way from the prospective award of the contract to VLC– the company that offered to build a plant in West Virginia.[2]

Furthermore, the most the Government can come up with to support a felony conviction for mail fraud is that Butch accepted meals and other hospitality from a vendor.

---

[1] "A. The facts were indisputable that every month we had increased our sales over the previous month as a result of the advertising that we were doing, and it was working. Working very well." Bryan, direct, TR VI, p. 45.

[2]
"Q. All right. You went to Bozeman, Montana in August of 1992.
A. I believe that's correct.
Q. Were you directed to do that by anyone?
A. Yes.
Q. By whom?
A. The Governor.
Q. Did he tell you what purpose he wanted you to go?
A. Yes he did.
Q. What was that?
A. It was– he had an offer or proposal to him from officials of VLC concerning the possibility of a plant for West Virginia."

TR Vol. VI, p. 57

The Government says in its brief at page 35:

> Moran testified that over the three-year period he was lobbying Bryan, he bought things for Bryan– meals, golf, flowers, drinks– "more than a hundred" times. (Vol. 5, pp. 16, 26.)

The Government makes great moment of the fact that the Lottery statute is stricter than the general West Virginia Ethics Act, but that was not how the State Tax Department interpreted it at the time. Indeed, Butch's lawyer tried to introduce an account of the ethics lecture given by the Secretary of Tax and Revenue as to what constituted violation of the statute, but Judge Haden would not allow the testimony. (TR Vol. 6, pp. 32-33). Although the West Virginia Supreme Court of Appeals might say that there is a difference between the Ethics Act's prescription of bribery and the Lottery Act's prescription of bribery, until there were such a definitive ruling, it is hard to say that following the Ethics Act's definition of what constitute the "hospitality" exceptions to the gift proscriptions would justify conviction for a Federal felony.[3]

---

[3] *W. Va. Code* 6B-2-5 [1989], the statute in effect at the time of Butch's trial provided:

c) Gifts -- (1) An official or employee of the state may not solicit any gift. No official or employee may knowingly accept any gift, directly or indirectly, from any person whom the official or employee knows or has reason to know:

(A) Is doing or seeking to do business of any kind with his or her agency;

(B) Is engaged in activities which are regulated or controlled by his or her agency;

(C) Has financial interests which may be substantially and materially affected, in a manner distinguishable from the public generally, by the performance or nonperformance of his official duties.

(2) Notwithstanding the provisions of subdivision (1) of this subsection, a person who is a public official or public employee may accept a gift described in this subdivision, and there shall be a presumption that

---

the receipt of such gift does not impair the impartiality and independent judgment of the person. This presumption may be rebutted only by direct objective evidence that the gift did impair the impartiality and independent judgment of the person or that the person knew or had reason to know that the gift was offered with the intent to impair his or her impartiality and independent judgment. The provisions of subdivision (1) of this subsection do not apply to:

**(A) Meals and beverages**;

**(B) Ceremonial gifts or awards which have insignificant monetary value**;

**(C) Unsolicited gifts of nominal value or trivial items of informational value**;

(D) Reasonable expenses for food, travel, and lodging of the official or employee for a meeting at which the official or employee participates in a panel or speaking engagement at the meeting;

(E) Gifts of tickets or free admission extended to a public official or public employee to attend charitable, cultural or political events, if the purpose of such gift or admission is a courtesy or ceremony customarily extended to the office;

(F) Gifts that are purely private and personal in nature; or

(G) Gifts from relatives by blood or marriage, or a member of the same household.

[Emphasis added.]

The Government suggested that the provisions of the West Virginia Lottery Act imposed a higher standard; however, whether normal entertainment in the form of meals and hospitality constitutes a gift or thing of value is highly debatable given the express provisions of the Ethics Act. The Lottery Act in effect at the time of this case was as follows:

§ 29-22-13. Prohibited acts; conflict of interest; prohibited gifts and gratuities.

(1) The commissioners, the director, the deputy directors and the employees of the lottery may not directly or indirectly, individually, or as a member of a partnership or as a shareholder of a corporation have an interest in dealing in a lottery.

(2) A member of the commission, the director, and an employee of the lottery or a member of their immediate families **may not ask for, offer to accept, or receive any gift, gratuity or other thing of value from any person, corporation, association or firm contracting or seeking to contract with the state to supply gaming equipment or materials for use in the**

Throughout this trial the Court evinced a surpassing hostility to Butch Bryan. It would be tedious to attempt to catalogue all the specific instances, but this Honorable Court can get a feel for the general pro-conviction determination by the Court by reading the direct testimony of Butch, TR  pp. 27 to 93 where the U.S. Attorney continually interrupted Butch's narrative with frivolous objections based either on "leading" or on 'hearsay,' which objections the Court improperly sustained. What comes across clearly to any experienced judge is the prosecutor's and the judge's  desire to prevent Butch from presenting his side of the story in a coherent form. Many of the sustained objections arose from Butch's explaining that he had done this or that based upon information he had received from others. As part of a narrative explaining why the declarant did a particular thing, these type of out-of-court statements are specifically allowed under Rule 803(3), *Fed. R. Evid*[4] or they are simply not hearsay because they are not admitted for the truth of

---

**operation of a lottery or from an applicant for a license to sell tickets in the lottery or from a licensee.**

(3) A person, corporation, association or firm contracting or seeking to contract with the state to supply gaming equipment or materials for use in the operation of a lottery, an applicant for a license to sell tickets in the lottery or a licensee may not offer a member of the commission, an employee of the lottery, or a member of their immediate families any gift, gratuity or other thing of value.

[4] "While a state of mind statement cannot be offered to prove that a past event occurred, it can be offered in some cases to prove the occurrence of an event subsequent to the statement. See, e.g., United States v. Tokars, 95 F.3d 1520 (11th Cir. 1996) (statements of one defendant's wife that she intended to divorce the defendant were admissible to show a motive for the defendant to murder her). Rule 803(3) preserves the rule of Mutual Life Insurance Co. v. Hillmon, 145 U.S.

the matter asserted.[5] Petty politics, after all, is not the exclusive province of, lottery executives, the State Senate or liquor inspectors: It is well known that taking down a sitting governor is the way to fame and fortune in the U.S. attorney's office. Thus I would ask the Court, when the Court looks at the transcript, to keep in mind the old rule that when you see an owl at a mouse picnic, you know he didn't come for the sack races!

And now we are back to Judge Easterbrook's observations *supra*: the mail and wire fraud statutes invite political and/or personal retribution for reasons far removed from any real scheme or artifice to defraud. Thus, under the old pre-McNally precedents revived by statute, actions that don't even amount to petty state misdemeanors can be converted into serious federal felonies, which is the problem that the U.S. Supreme Court wrestled with in both *McNally* and *Skilling*.

## II
### *The Real Focus of This Case*

But all discussions of prosecutorial abuse aside, as a purely technical matter, the only grounds for Butch's conviction was the unconstitutionally vague law of "deprivation of honest services." Judge Haden specifically instructed (*see, infra*) that for "property" fraud,

---

285 (1892), allowing evidence of intent as tending to prove the doing of the act intended."

USCS *Fed Rules Evid* R 803 Official Commentary


[5] Often what someone says simply provides background as to why the witness did a particular thing. Thus the statement: "She told me that the building was on fire, so I ran out," is no more "hearsay" than the statement: "The deer ran in front of my car, so I swerved into the other lane."

the defendant must have profited personally in some way.[6] Thus, contrary to the argument by the Government, Butch Bryan's case was **always** about "deprivation of honest services" and **never** about a scheme or artifice to defraud persons of property.

### *What Counts are the Arguments of Counsel*

Any lawyer who regularly tries cases knows that only two things really count in a jury trial: the opening statement and the closing argument! In this case the Court's charge is largely boilerplate; the charge spends almost no time on what acts might constitute mail or wire fraud. Indeed the total discussion of this issue by the Court consisted of the following:

> In both statutes I have spoken of "scheme" and "artifice". The word "scheme" and "artifice" as used in the mail fraud and wire fraud statutes includes any plan or course of action intended to deceive others and to obtain by false or fraudulently [sic] pretenses money or property from the person or organization so deceived. For the purposes of both mail fraud and wire fraud statutes, the terms "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

TR Vol. VII, pp. 103-104.  However, the Court clearly instructed that to be convicted because of a scheme involving property, the Defendant must attempt to "obtain" property as a result of the deception. Even the Government admits that except for *de minimus* hospitality, Butch never tried to get anything for himself. Under the evidence, then, we are left with only the "deprivation of honest services" theory.  Nowhere else in the instructions is **any** mention

---

[6]Just as background, it should be remembered that at the time this trial was conducted, video lottery and gambling in general were not done deals in West Virginia. Undersigned counsel at the time had great reservations about an expansion of gambling (what counsel has always thought of as a "stupidity tax") so there was a lot going on in this case politically that doesn't spring from the printed record!

made of keeping someone from getting a contract or directing a contract to a particular bidder as being the type of things that would constitute "obtain property" cognizable under the mail and wire fraud statutes. Indeed, the instruction itself says to "obtain by false or fraudulently [sic] pretenses money or property from the person or organization deceived."

Nowhere in this Transcript is there the least hint that Butch Bryan tried to receive money <u>himself</u> from the person or organization deceived. Therefore, applying a little legal realism, it becomes obvious that the **<u>entire</u>** focus of this trial was upon the "theft of honest services" component of then-existing mail fraud jurisprudence, completely in harmony with the Judge's instructions.

The focus of any trial finally emerges in the closing arguments after all the evidence is in. The closing arguments in this case completely foreclose any suggestion that this case was anything but an "honest services" case. Nowhere in the closing argument does Mr. Ellis call the jury's attention to the giving of the advertising contract to the Falgren agency as the act of defrauding **<u>property</u>**; rather, Mr. Ellis's and later Mr. Miller's entire focus was upon the giving of the contract to Falgren as an instance of deprivation of honest services! The idea that this trial at any point focused on fraudulent deprivation of **<u>property</u>** is entirely a fiction of Mr. Ellis's coram nobis imagination!

Looking at Volume VII of the *Transcript*, i.e., the volume that contains closing statements and the jury instructions, there are four specific references to the fact that the mail fraud and wire fraud counts are predicated on deprivation of honest services. Thus, on page 56 of the Government's closing argument deprivation of honest services is specifically

referenced, and again on page 91 during the Government's rebuttal argument deprivation of honest services is referenced.[7] In the Defendant's closing statement, on pages 82-83 and again on page 88, the only theory of mail or wire fraud that the Defendant attempted to rebut was the deprivation of honest services.[8] And this is entirely reasonable because in order for

---

[7]

"What happened after these forms were destroyed? The West Virginia Lottery Commission, a statutory body created by statute, meeting in formal open session in front of the press, the public and everybody was defrauded. They were defrauded out of this defendant's honest services. He owes them a duty of honesty. He works for them in a sense, and he has a duty to be honest with them. It just doesn't work if he doesn't. It's just a sham if he's not honest." Vol. VII, p. 56 (Mr. Ellis's close.)

"Mr. Jones has difficulty reconciling the term honesty with government. I submit to you, ladies and gentlemen, that is not a difficult concept to separate at all. Perhaps it was for Mr. Bryan. Perhaps it's difficult for Mr. Jones. But it is not a difficult concept. The citizens of this state have a right to expect honesty from its public officials. No more, no less. And what happened during this man's tenure as lottery director can in no way be described as honesty." Vol. VII, p. 91 (Mr. Miller's rebuttal.)

[8]

"Now, that's their case for insider trading and dishonest government or honest government. Has there been facts set forth here to you members of the jury to demonstrate to you, to prove to you beyond a reasonable doubt this illusive term "dishonest government". Or "honest government" as the case may be. The statute refers to it in terms of honest government. How do you define it? Who is guilty, of what, to which you can scribe the term "dishonest government" or "honest government" and where is the harm and where is the resulting benefit.

They say they don't have to prove the harm and benefit. Well, members of the jury, there has to be some motive in somebody's mind, some motive to somebody before you can believe that they acted in dishonest and intentional manner and there has been none shown." Vol. VII, pp. 82-83. (Mr. Jones for the Defense.)

"If you are going to be convicted on bad judgment, jail is going to be so full there is going to be people lined up to get in them. Simply because this involves political process– and I know all of us are suspicious about the political process. Oh, well, it's politics. Politics as usual. But that doesn't necessarily mean that it's corrupt. A lot of people get their jobs through political influence or political appointments, that doesn't mean they are corrupt. And I submit to you, members of the jury, that if you base this case on the evidence, it falls far short of establishing

the "scheme or artifice to defraud property" theory to have been applicable, the Government would have needed to prove that Butch tried to get money for himself through the scheme. That is exactly what the Judge said in the instruction quoted above.

Therefore, when we look at the most important, as well as the most structured part of the trial, i.e., the Court's instructions and the closing arguments, only one theory supporting a conviction for mail fraud and wire fraud emerges, namely deprivation of honest services. Judge Haden spoke specifically <u>only</u> of how a deprivation of honest services would support mail and wire fraud convictions, and Mr. Ellis and Mr. Miller argued that Butch was guilty <u>only</u> because he deprived the State of his honest services.

Therefore, to assert that instructing on deprivation of honest services and arguing <u>exclusively</u> that theory in support of conviction for mail and wire fraud is somehow "harmless error" borders on the ludicrous. Furthermore, there was no argument by the Government that the gravamen of Butch's deprivation of honest services was his acceptance of *de minimus* hospitality. (*See*, footnotes 7 and 8 for <u>all</u> references to dishonest services.) This case was tried, instructed upon and argued as a case involving mail fraud and wire fraud because Butch rigged two contracts. There was never any allusion to the "bribe" or "kickback" authorized in *Skilling*.

---

there was not an honest effort by Mr. Bryan to do the best job he could for the lottery and for the State of West Virginia."
Vol. VII, p. 88. (Mr. Jones for the Defense.)

### *The Law*

The proper rule is still set forth in *Mandel* as follows:

> Whatever the rule may be elsewhere, we hold that in a case in which the jury considers alternate theories of liability, we must reverse the convictions if either theory is an improper basis for punishment. United States v. Mallas, 762 F.2d 361, 363, n. 3 (4th Cir. 1985). The latest application of this rule that we find is in Mills v. Maryland, 56 U.S.L.W. 4503, 4506, 486 U.S. 367, 100 L. Ed. 2d 384, 108 S. Ct. 1860 (1988). In order not to apply the rule, we must be able to say "with a high degree of probability" that the jury did not rely on the legally incorrect theory. United States v. Alexander, 748 F.2d 185, 189 (4th Cir. 1985).

*United States v. Mandel*, 862 F.2d 1067, 1073-1074 (4th Cir.,1988)

Furthermore, this holding of *Mandel* has never been overruled in either the Fourth Circuit or elsewhere, and *Mandel's* liberal approach to *coram nobis* relief has been reaffirmed by the D.C. Circuit as recently as 2011:

> But even if the error claimed by Magnus was a legal one — a misconception by the trial court at the time of the guilty plea as to the conduct constitutionally within the reach of the CPWL, UF, and UA statutes — he still may pursue coram nobis relief. Such relief is no longer limited to the correction of purely factual errors. At least since the Supreme Court resurrected the remedy over half a century ago in Morgan, its scope has expanded to encompass the correction of fundamental legal errors in addition to factual ones. The Court recently described modern coram nobis as "an extraordinary tool to correct a legal or factual error." And, as a leading treatise observes, federal courts routinely have granted the writ in cases such as this one, "where the applicant demonstrates that his conduct was not criminal under the law as later interpreted by the [Supreme] Court." In United States v. Mandel, for example, the Fourth Circuit granted coram nobis relief "in light of a retroactive dispositive change in the law of mail fraud" effected by a subsequent Supreme Court decision. Other federal courts of appeals (not to mention federal district courts) have reached the same conclusion. A conviction for conduct that is not criminal, but is instead constitutionally-protected, is the ultimate miscarriage of justice.

*Magnus v. United States*, 2011 D.C. App. LEXIS 3, 18-19 (D.C. Jan. 6, 2011) [footnotes omitted.]

Finally, Mr. Ellis, in the Government's own brief, actually sets out the proper rule with regard to the application of *Mandel* concerning the remedy when the jury is instructed on an incorrect theory of guilt. The Government says:

> These cases [9] allow exceptions to the rule in *Mandel* where there is a "high degree of probability" that the jury convicted under a valid theory.

When this Honorable Court reads Judge Haden's instructions, the closing arguments of Mr. Ellis for the Government, Mr. Jones for the Defendant and the rebuttal argument of Mr. Miller for the Government, it is inconceivable that this Honorable Court can find a "high degree of probability" that the jury convicted under a valid theory. The jury found mail and wire fraud, to a very high degree of probability, based on the theory of deprivation of honest services.

### III

### *The Perjury Conviction*

It is rare, indeed, that a case is tried based on a crime that does not exist. Notwithstanding the Government's assertion that somehow *United States v. O'Hagen,* 521 U.S. 642 (1997) makes all the evidence of insider trading presented against Butch proper, the

---

[9] United States v. Alexander, 748 F.2d 185, 189 (4th Cir. 1984); Brooks v. Leeke No. 89-7611, 1990 WL 2332 (4th Cir. Jan. 16, 1990) (unpublished) and Boatwright v. United States, 779 F. Supp 383 (D. Md. 1991).

truth is that at the time Butch was convicted, his acts did not constitute a criminal act in the Fourth Circuit. Therefore, we have a situation where Butch was prosecuted for three crimes that did not exist, namely mail fraud based on deprivation of honest services, wire fraud based on deprivation of honest services (Counts I and II) and insider trading based on the "misappropriation theory", (Counts III and IV.)

In this trial there was a mountain of evidence tending to prove that Butch Bryan was generally a reprehensible, dishonest, conniving, duplicitous, dishonorable, self-serving and despicable human being. Furthermore, all of this evidence was introduced to demonstrate that Butch had committed two crimes that didn't exist, namely mail and wire fraud involving deprivation of honest services and insider trading based on "misappropriation."

Given that the crimes that Butch was alleged to have committed did not exist, it hardly seems a stretch to point out that all of the truly damning evidence against him was, at least at this remove, inadmissible. That then implicates the simple rule that the admission of highly prejudicial but inadmissible evidence is reversible error. The best statement of the general rule emerges from *United States v. Ince*, 21 F.3d 576 (4th Cir. Va. 1994) which holds that in determining whether inadmissible evidence warrants reversal the Court looks to three criteria, namely "(1) the centrality of the issue affected by the error; (2) the steps taken to mitigate the effects of the error; and (3) the closeness of the case." 21 F.3d at 583.[10]

---

[10] *See, also*: *United States v. Colombo*, 909 F.2d 711 (2d Cir. N.Y. 1990); *United States v. Sanders*, 964 F.2d 295 (4th Cir. Va. 1992); and, *Sparks v. Gilley Trucking Co.*, 992 F.2d 50 (4th Cir. N.C. 1993). All of these cases emphasize that the "closeness of the case" is the

Page 14 of 20

In Butch's case, the dispositive factor is "the closeness of the case." Even the Fourth Circuit had a hard time swallowing Butch's conviction for perjury, as the commentary in the Court's opinion clearly shows:

> Bryan finally challenges his conviction for perjury under oath before a grand jury. See 18 U.S.C. § 1623. This conviction relates to Bryan's responses to prosecution questions before a federal grand jury regarding the drafting of the RFP for the video lottery contract. The government contended at trial that Bryan deliberately lied in response to government questioning to cover up the fact that VLC representatives had participated in the drafting of the RFP.
>
> The grand jury questioning on which the perjury conviction is based proceeded as follows: Q. Who wrote the RFP? A. The RFP was put together by a committee of specialized people at the Lottery. . . .Q. I want you to tell me everybody on the committee who had any input into the document. . . .
>
> [Omitted here are several questions and answers pertaining to Bryan's identification of the committee members who worked on the RFP.] Q. Who else participated in the RFP? A. Tammy Gunnoe is a specialist in the division of marketing. All of those components are required in this proposal and they all worked on this document.Q. Who else worked on the RFP? A. I obviously had some input on it. . . . I made recommendations that I would like to see and they worked from that. . . .Q. Anyone else have input into the drafting of the RFP, as far as you know? A. Well, they may have called upon people within their sections to provide information. Q. As far as you know, did anyone else have input into it? A. No, they were the people that I assigned to prepare it. Q. Okay, and so we would have to ask them if they received input from others, right? A. Yes, Ma'am.
>
> Appellee's Br. at 34-35. Bryan contends that the questioner's initial focus on "everybody on the committee who had input into the document" led him to believe that the entire line of questioning was concerned only with which employees at the Lottery worked on the RFP. Appellant's Br. at 45.
>
> The federal statute proscribing perjury before a grand jury provides that Whoever under oath

---

cynosure for determining whether the admission of prejudicial evidence is reversible or simply harmless.

> . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined . . . or imprisoned.
>
> 18 U.S.C. § 1623. In interpreting the analogous federal perjury statute, 18 U.S.C. § 1621, the Supreme Court has stated that the perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner -- so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry.
>
> Bronston v. United States, 409 U.S. 352, 360, 34 L. Ed. 2d 568, 93 S. Ct. 595 (1973). The Court also stated that "precise questioning is imperative as a predicate for the offense of perjury." Id. at 362.
>
> **Given the Supreme Court's command to construe the perjury statute narrowly, we are sympathetic to Bryan's claim**. **The questioner's initial focus on committee members could well have led Bryan to believe that the question, "Did anyone else have input into it," only pertained to committee members. Bryan's response of "No, they were the people that I assigned to prepare it" evinces such an understanding**. Nonetheless, we are satisfied that the prosecution's repeated inquiry into whether "anyone else" contributed to the RFP provided the jury an adequate basis upon which to conclude that Bryan understood that the focus of the questioning had changed from the committee members to anyone else who might have had input into the RFP and that he deliberately lied to the grand jury when he answered that no one else had been involved.

*Bryan* at 960 [emphasis added.]

The government's argument that Butch waived being prejudiced by inadmissible evidence because he didn't raise the issue on direct appeal has to be a parody of Federal criminal jurisprudence. On appeal in the original case, Butch argued that he was innocent of perjury: If his argument was innocence, how stupid would he have looked if he had then said that the big error was evidentiary? Although the reversal of the insider trading count was foreseeable based on various circuit courts' reluctance to adopt the misappropriation theory, the judicial narrowing of the deprivation of honest services theory, given the pre-McNally precedent, was entirely unforeseeable. Indeed, Butch's position now is that he is not guilty

of perjury and that if all of the prejudicial, inadmissible evidence had been excluded and the trial had focused on alleged perjury alone, he would not have been convicted.

## IV

### *Conclusion*

Over the course of decades decisional law becomes encrusted with contradictory precedents, ultimately allowing judges to do virtually anything that they want. Much of the apparent idiocy of the law emerges from quick-witted judges' working backward from the result they want to some tricky procedural way of achieving that result because procedure is more easily manipulated than substantive law. Then, of course, dim-witted judges and inexperienced law clerks proceed to take them both seriously and, worse still, literally.

And so it is with the myriad procedural rules that emerge from fifty years of federal criminal jurisprudence spanning courts that have vacillated between extreme "liberalism" and extreme "conservatism." At the end of the day, there is little argument that dangerous criminals should remain in jail while the innocent should be freed. But to the former end the courts have developed myriad procedural doctrines such as "waiver," "harmless error," "burden of proof on collateral attack," "standard of review on collateral attack," and "interest in finality." Generally, then, when all is said and done, these procedural devices can be manipulated to affirm virtually any conviction, to say nothing of confounding any legitimate collateral attack upon an utterly outrageous and lawless conviction.

Butch's petition for relief is very different from the great majority of collateral attacks on convictions. In Butch's case, the clear, black letter rules have been confounded: First, Rule 402, *Fed. R. Evid.* provides that irrelevant evidence should be excluded from trial. Furthermore, Rule 403 makes the point that evidence that might be relevant should also be excluded if it's prejudicial value far outweighs its probative value.[11] With regard to the perjury conviction, the evidence in virtually six and three quarters of the seven volumes of Record in this case was irrelevant, inadmissible evidence with regard to the charge of perjury. And, as the Fourth Circuit has said, the cynosure of whether an evidentiary error, namely the admission of inadmissible evidence, is reversible is "the closeness of the case." *Ince*, *supra*.

But at the end of the day, the perjury conviction is the tail whilst the wire fraud and mail fraud counts are the dog. This case was entirely tried, argued and instructed upon as a "deprivation of honest services" case; there is no evidence that Butch Bryan ever tried to get property for himself through a scheme or artifice to defraud. Therefore, Butch Bryan is entitled to have his name cleared by the issuance of the writ of error coram nobis for which he prays.

---

[11] *See, e.g.,* United States v. Krulewitch, 145 F.2d 76 (2d Cir. 1944); United States v. Frick, 588 F.2d 531, 537 (5th Cir. 1979); United States v. Colombo, 909 F.2d 711, 713-715 (2d Cir. N.Y. 1990)

                                                Respectfully submitted,
Elton E. Bryan
        by Counsel

/s/*Richard Neely*
Richard Neely
**NEELY & CALLAGHAN**
159 Summers St.
Charleston, WV 25301
304-343-6500 Voice
304-343-6528 Fax
RNeely@NeelyCallaghan.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston

**ELTON E. BRYAN,**

    Petitioner

                                                                             2:93-CR-00898

v.

**UNITED STATES OF AMERICA**

    Respondent

## CERTIFICATE OF SERVICE

       I, Richard Neely, counsel for Petitioner, do hereby certify that I served the foregoing Reply to the Government's Response to Petitioner's Petition for a Writ of Error Coram Nobis upon the following members of the staff of the United States Attorney's Office for the Southern District of West Virginia, to-wit:

Hon. R. Booth Goodwin, II
*United States Attorney*
Hunter Paul Smith, Jr., Esq.
*Assistant United States Attorney*
Larry R. Ellis, Esq.
*Assistant United States Attorney*

by filing same electronically using the United States District Court's electronic filing system operated by the Clerk's office on the 18th day of January, 2011.

/s/ Richard Neely
Richard Neely
**NEELY & CALLAGHAN**
159 Summers St.
Charleston, WV 25301
304-343-6500 Voice
304-343-6528 Fax
Rneely@NeelyCallaghan.com