IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston

**ELTON E. BRYAN,**

    Petitioner

                                                         **Civil Action No. 2:10-cv-01196**

v.

**UNITED STATES OF AMERICA**

    Respondent

**PETITIONER'S SUPPLEMENTAL BRIEF
ON STANDARDS OF REVIEW THAT GOVERN
THIS CORAM NOBIS PROCEEDING**

Comes now Petitioner Elton E. "Butch" Bryan and files this brief at the request of the Court covering the appropriate standard of review governing *coram nobs* proceedings.

**I**
*Modern History of Coram Nobs*

In 1939, Robert Patrick Morgan pled guilty to eight federal criminal counts related to the theft of three pieces of mail from the U.S. Postal Service.[1] He was nineteen years old, did not retain counsel, and apparently never waived his right to retain counsel. The U.S.

---

[1] *United States v. Morgan*, 202 F.2d 67, 67 (2d Cir. 1953), afield, 346 U.S. 502 (1954).

District Court for the Northern District of New York sentenced Morgan to four years in prison. Eleven years later, in 1950, Morgan was convicted of attempted burglary in a New York state court, and, pursuant to New York's Multiple Offenders Law, the state court sentenced Morgan to a longer term than it otherwise would have on account of the previous federal conviction. Facing a longer state sentence, Morgan filed a motion for a writ of coram nobis in the U.S. District for the Northern District of New York seeking to vacate his federal conviction of 1939, which formed the basis for his extended state sentence.

The federal court thus squarely faced the question of whether the writ of coram nobis was available in federal criminal cases at all, and if so, whether Morgan's circumstances qualified. The district court tried to side-step the issue by treating Morgan's motion as one for relief under 28 U.S.C. § 2255, the federal habeas statute. It thus denied the motion, reasoning that it did not have jurisdiction because Morgan was no longer "in custody" as required by § 2255. The Second Circuit, however, insisted that coram nobis would be proper "if Morgan can establish that he was deprived of his common law right to be represented by counsel."

The Supreme Court affirmed the court of appeals judgment, concluding that federal courts have the power to grant motions "in the nature of the extraordinary writ of coram nobs." [2] Writing that "in behalf of the unfortunates, federal courts should act in doing justice

---

[2] *Morgan*, 346 U.S. at 512-13

if the record makes plain a right to relief,"[3] the five-justice majority revitalized the ancient writ and placed it on a firm footing.

The Court conceded "a difference of opinion as to the availability of the remedy" among the lower federal courts [4] and noted that "coram nobis is not specifically authorized by any statute enacted by Congress." [5] Indeed, the writ had been abolished in civil cases by Rule 60(b) of the *Federal Rules of Civil Procedure*. Tracing its long history in common law,[6] however, the Court found sufficient statutory authority for the "ancient writ of coram nobis" in the All Writs Act of 1789, which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[7]

Writing for the majority, Justice Reed forcefully rejected the dissent's position that promulgation of § 2255 superseded any remedy in the nature of coram nobis in federal

---

[3] Id. at 505

[4] Id. at 509

[5] Id. at 506

[6] Id. 507-508

[7] Id. at 506 and Note 6, quoting All Writs Act, 28 U.S.C. 1651(a).

courts.[8] The majority explained that the purpose of § 2255 was ""to meet practical difficulties' in the administration of federal habeas corpus jurisdiction," not to "cover the entire field of remedies in the nature of coram nobs."[9] Reiterating that "nowhere in the history of § 2255 do we find any purpose to impinge upon prisoners' rights to collateral attack upon their convictions," the Court concluded, "We do not think that the enactment of § 2255 is a bar to this [coram nobs] motion."[10]

The Court went on to sketch out the circumstances under which the writ may be available. Coram nobis relief "should be allowed ... only under circumstances compelling such action to achieve justice" - namely, (a) curing of "errors "of the most fundamental character'" when (b) "no other remedy [is] then available" and (c) "sound reasons [exist] for failure to seek appropriate earlier relief."[11]

---

[8] Id. at 511

[9] Id. at 510-511.

[10] Id. at 511.

[11] Id. at 511-12. The Court explained how Morgan's case fit the first two conditions it laid out: the denial of Morgan's right to counsel constituted the fundamental error of his state conviction, and no other remedy for that error was currently available. Id. However, the Court did not explain what "sound reasons" Morgan may have had for not seeking appropriate relief earlier, e.g., on direct appeal or in the form of a habeas motion. After all, the constitutional right to counsel, to which Morgan appealed, was available as a ground for habeas relief at least since *Johnson v. Zerbst*, 304 U.S. 458 (1938), a case decided before Morgan's 1939 conviction in federal district court.

In Petitioner Bryan's case, the Government has asserted that Mr. Bryan should have raised the issue of whether his perjury conviction was flawed because of the mountain of inadmissible evidence that prejudiced the jury. As it turns out, on appeal Mr. Bryan asserted that he was innocent of perjury: It would have been confusing to make the further argument that, because both the insider trading prosecutions and mail and wire fraud prosecutions were infirm, the perjury conviction should be overturned for <u>evidentiary</u> reasons rather than because Mr. Bryan simply hadn't lied.

The key legal result of *United States v. Morgan* was the Court's holding that the violation of Morgan's right to counsel constituted an error of the most fundamental character. This holding transformed coram nobis from its traditional function as a means for curing factual errors, unknown to the trial court, to a new function of curing any error of "the most fundamental character," including legal error. The majority did not even attempt to argue that the basis for Morgan's motion was an alleged error in fact, unknown to the sentencing judge. Rather, the Court ignored that issue entirely and, relying on language from *United States v. Mayer*, held that coram nobis may be applied to cure "fundamental errors."[12] By focusing on the phrase "errors of the most fundamental character" and ignoring the phrase "errors of fact," the Court not only rescued coram nobis from legal "limbo," but also revitalized the writ

---

[12] Id. at 512 (majority opinion) ("In the Mayer case, this Court said that coram nobis included errors "of the most fundamental character.'") (quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914)).

by creating a new function for it. Rather than an obscure writ only good for correcting factual errors, coram nobis became a collateral remedy available in federal court to correct fundamental legal errors when alternative avenues of relief are unavailable. Moreover, while the Court limited its applicability to cases in which habeas relief was unavailable, by dubbing a petition for coram nobis as "of the same general character as one under 28 U.S.C. § 2255," [13] the Court effectively created a companion writ to habeas corpus. Coram nobis became, in essence, habeas for those not in federal custody.

The greatest point of contention between the majority and the minority - which still sets the terms of debate surrounding coram nobs today and is the cynosure of the controversy between Mr. Bryan and Mr. ReBrook on one side and Government on the other - is the proper weight assigned to the values of accuracy and finality. The majority held that coram nobis should be available only in extraordinary cases, but that finality must bow to accuracy where the "record makes plain a right to relief."[14] "Otherwise," wrote Justice Reed, "a wrong may stand uncorrected which the available remedy would right." The majority noted that the "wrong" of an unlawful conviction is not only an abstract injustice in the system, but also that "the results of the conviction may persist" for the convicted person himself.

---

[13] Id. at 506, note 4.

[14] Id. at 505.

## II

### *Standards of Review*

"Because of the similarities between coram nobis proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in coram nobis cases. *See, Pitts v. United States*, 763 F.2d 197, 198 n. 1 (6th Cir. 1985) (per curiam) (noting that the standards for granting relief under § 2255 and coram nobis are substantially the same)." *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. Tenn. 1996). "Due to the distinct similarities between coram nobis proceedings and § 2255 proceedings, § 2255 procedure is applied by analogy in coram nobs cases." *United States v. Vogel*, 2006 U.S. Dist. LEXIS 27945, 4-5 (D.S.C. Apr. 20, 2006).

Petitioner Bryan accepts the proposition asserted by the Government that in order to be entitled to relief he must make the same showing in this coram nobs proceeding that he would need to make in a habeas corpus proceeding. Therefore, there are basically three standards that the courts universally say must be applied: First, there is the standard established in *Brecht v. Abrahamson*, 507 U.S. 619 (1993) and reaffirmed in *Hedgpeth v. Pulido*, 555 U.S. 57 ( 2008) which asks "whether the error had a substantial and injurious effect or influence in determining the jury's verdict." Second, there is the standard of "actual innocence" established by *Bousley v. United States,* 523 U.S. 614 (1998) that becomes applicable when, <u>but</u> <u>only</u> <u>when</u>, petitioner seeks to avoid a procedural default. And, third,

there is the standard that any doubt concerning prejudice must be resolved in favor of the petitioner established in *O'Neal v. Warden*, 513 U.S. 432 (1995). Thus, when there is grave doubt about whether a federal constitutional trial error had "a substantial and injurious effect or influence" in determining the jury's verdict, the doubt must be resolved in favor of the Petitioner.

### a. Actual Innocence

The government has made the argument that because in *United States v. O'Hagan*, 521 U.S. 642, (1997) the Supreme Court recognized the "misappropriation theory" as a valid theory for prosecution for insider trading, that Petitioner fails to meet the "actual innocence" standard. This is a truly absurd argument! The government fails to appreciate that the "actual innocence" standard applies only when a coram nobs petitioner seeks to overcome a procedural default such as failure to raise an issue on appeal.[15] In oral argument, the Government conceded that Mr. Bryan suffered no procedural default.[16]

---

15
  During oral argument, the Government alluded to the case of *Trenkler v. United States*, 536 F.3d 85 (1st Cir., 2008) which discussed the "actual innocence" standard in the context of a petition for coram nobs relief by a prisoner in custody. The Court ruled that when a prisoner is in custody, the procedural gate keeping functions of 2255 apply and coram nobs cannot be used to circumvent the restrictions on multiple 2255 petitions. However, the Court reasoned, coram nobs might be available to an incarcerated petitioner if he could show "actual innocence."

16
  THE COURT: All right. Now, let's kind of go over
14 what you've said here. You believe Mr. ReBrook has
15 procedurally defaulted the issue and therefore he has to go
16 under Bousley. You, I take it, concede that Mr. Bryan has
17 preserved his issue on appeal throughout and therefore he has

In Petitioner's case, there has been <u>no</u> <u>procedural</u> <u>default</u>: Petitioner asserted in his appeal that the "misappropriation theory" was not a valid grounds for prosecution and that the theory was not accepted in the Fourth Circuit. The Fourth Circuit agreed and reversed Petitioner's conviction for insider trading. What are at stake in this coram nobs proceeding are only the mail fraud, wire fraud and perjury counts that were <u>affirmed</u> by the Fourth Circuit. The Petitioner was <u>exonerated</u> by the Fourth Circuit on the insider trading count and that is *res judicata*; the "actual innocence" standard would come into play in this case <u>only</u> if the Government were somehow attempting to reinstate a conviction that was overturned sixteen years ago!

        **b.**    *Substantial Injurious Effect*

Petitioner asserts that under the *Skilling* case, what the government proved in support of mail fraud and wire fraud does not constitute a crime. It is hard to receive with a straight face the proposition that prosecuting a person for a crime that doesn't exist does not rise to the level of an error with "substantial injurious effect." Furthermore, there is no question,

---

18 not procedurally defaulted?

MR. ELLIS: That's right.

<u>Transcript</u>, p. 28

looking at the entire transcript, that the only theory on which Petitioner's mail fraud and wire fraud counts were sent to the jury was the theory of "deprivation of honest services."

Indeed the total discussion of this issue by the Court consisted of the following:

> In both statutes I have spoken of "scheme" and "artifice". The word "scheme" and "artifice" as used in the mail fraud and wire fraud statutes includes any plan or course of action intended to deceive others and to obtain by false or fraudulently [sic] pretenses money or property from the person or organization so deceived. For the purposes of both mail fraud and wire fraud statutes, the terms "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

TR Vol. VII, pp. 103-104. However, the Court clearly instructed that to be convicted because of a scheme involving property, the Defendant must attempt to "obtain" property as a result of the deception. Even the Government admits that except for *de minimus* hospitality, Butch Bryan never tried to get anything for himself. Under the evidence, then, we are left with only the "deprivation of honest services" theory. Nowhere else in the instructions is **any** mention made of keeping someone from getting a contract or directing a contract to a particular bidder as being the type of things that would constitute "obtain property" cognizable under the mail and wire fraud statutes. Indeed, the instruction itself says to "obtain by false or fraudulently [sic] pretenses money or property from the person or organization deceived."

This, then, implicates the rule in the *O'Neal* case, *supra*, that when there is "grave doubt," the doubt must be resolved in favor of the Petitioner. Here it is obvious that what

Government and defense counsel argued, what the court instructed on and what the jury considered was the "deprivation of honest services" theory. The Government, then, argues that there was a bit of evidence that Petitioner took hospitality from bidders, and that might constitute the taking of property. However, the rule is that when the jury is instructed on two theories, only one of which is valid, the conviction must be overturned unless the error is harmless.[17]

---

[17] At oral argument, Mr. Ellis for the Government, conceded that the Brecht "harmless error standard" is the appropriate standard of review in this case:

MR. ELLIS: Yes, I believe the court has stated it
6 correctly; inasmuch as Mr. Bryan has not procedurally
7 defaulted, he is reviewed under the standard in Brecht, which
8 is substantial and injurious effect. Now –

9 THE COURT: Now, do you assert that coram nobs
10 review has a higher standard of review than harmless error?

11 MR. ELLIS: That it has a higher standard of review
12 than harmless error? Yes, under Brecht, that if -- I think
13 that the Brecht case, at the very least, heightens the sort of
14 harmless error review that would be applicable on direct
15 appeal. So I guess you could call them both harmless error,
16 but they are different standards. The harmless error standard
17 on direct appeal is Neder and Hedgpeth, and it's, you know, can
18 we say beyond a reasonable doubt that a jury -- a reasonable
19 jury would have convicted upon a valid theory under these
20 facts?
21 I think -- I think that both convictions survive under
22 that standard, but given that we are on collateral attack and
23 not on direct appeal, that standard is further limited by
24 Brecht, which says -- and I don't know if you would -- and I
25 don't know if you would call Brecht – continue to call it a
30
1 harmless error standard or not. I guess you do. But it's a

The proper rule is still set forth in *Mandel* as follows:

> Whatever the rule may be elsewhere, we hold that in a case in which the jury considers alternate theories of liability, we must reverse the convictions if either theory is an improper basis for punishment. United States v. Mallas, 762 F.2d 361, 363, n. 3 (4th Cir. 1985). The latest application of this rule that we find is in Mills v. Maryland, 56 U.S.L.W. 4503, 4506, 486 U.S. 367, 100 L. Ed. 2d 384, 108 S. Ct. 1860 (1988). In order not to apply the rule, we must be able to say "with a high degree of probability" that the jury did not rely on the legally incorrect theory. United States v. Alexander, 748 F.2d 185, 189 (4th Cir. 1985).

*United States v. Mandel*, 862 F.2d 1067, 1073-1074 (4th Cir.,1988). And this simply states traditional law that is regularly reaffirmed by the U.S. Supreme Court.[18]

In coram nobis, the standard for harmlessness is the *Brecht* standard, *supra*, which is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." When "deprivation of honest services" is the only theory specifically instructed upon, the only theory argued by the Government and the only theory rebutted by defense counsel, it is hard to say that the "honest services" theory didn't have a "substantial and injurious effect or influence in determining the jury's verdict."

---

2 different harmless error standard than that which would apply
3 on direct appeal. And the court stated it correctly that it's
4 the substantial and injurious effect test.

Transcript, pp. 29-30

18

"A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one. See Stromberg v. California, 283 U.S. 359, 51 S. Ct. 532, 75 L. Ed. 1117 (1931); Yates v. United States, 354 U.S. 298, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957)." *Hedgpeth v. Pulido*, 555 U.S. 57 at 58 (2008).

### c.     *The Grave Doubt Standard as Applied to the Perjury Count*

In the trial of Petitioner's case, there were seven volumes of transcript. At the initial hearing in this case there was no disagreement that 6.9 of those volumes dealt with three crimes that did not exist, namely (1) insider trading under the misappropriation theory, and mail fraud and wire fraud for deprivation of honest services. The perjury count was basically a throw-away.

Indeed, reading the recitation of the perjury evidence as summarized by the Fourth Circuit, it is highly likely that ambiguous questions were asked of Petitioner exactly for the purpose of setting him up for a perjury indictment. Three federal court decisions handed down in the 1950's, shortly after the famous prosecution of Alger Hiss for perjury, recognized that the Government may not base a perjury indictment and conviction upon answers that it elicits from a witness solely for the purpose of charging that those answers were false and perjurious. Those cases are *United States v. Icardi*, 140 F. Supp 383 (D.C. Dist. Ct., 1956); *Brown v. United States*, 245 F2d 549 (8th Cir. 1957); and, *United States v. Cross*, 170 F. Supp. 303 (D.C. Dist. Ct., 1959).

The rule that the Government can't set a Defendant up for perjury becomes important in this case because there was virtually no focus on the perjury charge during the trial except for a recitation of the testimony that the Fourth Circuit quoted in the original *Bryan* opinion. Simply reading the Fourth Circuit's summary of the testimony, the suspicion that the U.S.

Attorney deliberately asked vague and imprecise questions to set Petitioner up for a perjury prosecution leaps to mind.[19]

---

[19]

Here, again, is exactly what the Fourth Circuit says on the subject of Bryan's perjury:

> Bryan finally challenges his conviction for perjury under oath before a grand jury. See 18 U.S.C. § 1623. This conviction relates to Bryan's responses to prosecution questions before a federal grand jury regarding the drafting of the RFP for the video lottery contract. The government contended at trial that Bryan deliberately lied in response to government questioning to cover up the fact that VLC representatives had participated in the drafting of the RFP.
>
> The grand jury questioning on which the perjury conviction is based proceeded as follows: Q. Who wrote the RFP? A. The RFP was put together by a committee of specialized people at the Lottery. . . .Q. I want you to tell me everybody on the committee who had any input into the document. . . .
>
> [Omitted here are several questions and answers pertaining to Bryan's identification of the committee members who worked on the RFP.] Q. Who else participated in the RFP? A. Tammy Gunnoe is a specialist in the division of marketing. All of those components are required in this proposal and they all worked on this document.Q. Who else worked on the RFP? A. I obviously had some input on it. . . . I made recommendations that I would like to see and they worked from that. . . .Q. Anyone else have input into the drafting of the RFP, as far as you know? A. Well, they may have called upon people within their sections to provide information. Q. As far as you know, did anyone else have input into it? A. No, they were the people that I assigned to prepare it. Q. Okay, and so we would have to ask them if they received input from others, right? A. Yes, Ma'am.
>
> Appellee's Br. at 34-35. Bryan contends that the questioner's initial focus on "everybody on the committee who had input into the document" led him to believe that the entire line of questioning was concerned only with which employees at the Lottery worked on the RFP. Appellant's Br. at 45.
>
> The federal statute proscribing perjury before a grand jury provides that Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined . . . or imprisoned.
>
> 18 U.S.C. § 1623. In interpreting the analogous federal perjury statute, 18 U.S.C. § 1621, the Supreme Court has stated that the perjury statute is not to be loosely

All of the evidence about mail fraud, wire fraud, and insider trading was (1) highly prejudicial and (2) in hindsight, with the decisions in *Bryan* by the Fourth Circuit and *Skilling* by the U. S. Supreme Court, entirely irrelevant. Therefore, is it possible to say that, without all of the inadmissible, prejudicial evidence tending to show that the Petitioner is generally a bad person, that Petitioner would have been convicted of perjury? The evidence of perjury is flimsy at best by the Fourth Circuit's own admission. If this Honorable Court has any doubt, then under the standard of *O'Neal*, the writ of coram nobs must be granted on perjury as well. To allow the perjury conviction to stand would be a travesty and the exact type of miscarriage of justice that the *Morgan* case *supra* resurrected coram nobs to combat.

---

> construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner -- so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry.
>
> Bronston v. United States, 409 U.S. 352, 360, 34 L. Ed. 2d 568, 93 S. Ct. 595 (1973). The Court also stated that "precise questioning is imperative as a predicate for the offense of perjury." Id. at 362.
>
> **Given the Supreme Court's command to construe the perjury statute narrowly, we are sympathetic to Bryan's claim**. **The questioner's initial focus on committee members could well have led Bryan to believe that the question, "Did anyone else have input into it," only pertained to committee members. Bryan's response of "No, they were the people that I assigned to prepare it" evinces such an understanding**. Nonetheless, we are satisfied that the prosecution's repeated inquiry into whether "anyone else" contributed to the RFP provided the jury an adequate basis upon which to conclude that Bryan understood that the focus of the questioning had changed from the committee members to anyone else who might have had input into the RFP and that he deliberately lied to the grand jury when he answered that no one else had been involved.

*Bryan* at 960 [emphasis added.]

                                                  Respectfully submitted,
                                                  Elton E. Bryan,
                                                  by Counsel

/s/ *Richard Neely*
Richard Neely, WV Bar # 2709
NEELY & CALLAGHAN
159 Summers St.
Charleston, WV 25301
304-343-6500
304-343-6528 Fax
RNeely@NeelyCallaghan.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston

**ELTON E. BRYAN,**

   Petitioner

                                                                   2:93-CR-00898

v.

**UNITED STATES OF AMERICA**

   Respondent

## CERTIFICATE OF SERVICE

     I, Richard Neely, counsel for Petitioner, do hereby certify that I served the foregoing Supplemental Brief on Standards of Review upon the following members of the staff of the United States Attorney's Office for the Southern District of West Virginia, to-wit:

Hon. R. Booth Goodwin, II

*United States Attorney*

Hunter Paul Smith, Jr., Esq.

*Assistant United States Attorney*

Larry R. Ellis, Esq.

*Assistant United States Attorney*

by filing same electronically using the United States District Court's electronic filing system operated by the Clerk's office on the 26th day of April, 2011.

<u>/s/ Richard Neely</u>

Richard Neely

**NEELY & CALLAGHAN**

159 Summers St.

Charleston, WV 25301

304-343-6500 Voice

304-343-6528 Fax

Rneely@NeelyCallaghan.com