IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**ELTON E. BRYAN,**

    Petitioner,

v.                                CIVIL ACTION NO. 2:10-cv-01196

**UNITED STATES OF AMERICA,**

    Respondent.

RESPONSE OF THE UNITED STATES TO
PETITIONER'S SUPPLEMENTAL BRIEF ON STANDARDS
OF REVIEW THAT GOVERN THIS CORAM NOBIS PROCEEDING

**I.  The Inclusion of the "Honest-Services" Theory of Guilt in Counts One and Two is Harmless Error, Even Under the Direct-Appeal Standard of Review**

The petitioner's argument for coram nobis relief in this case is founded on the recent decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010). There the Supreme Court set restrictions on the "honest-services" mail fraud statute and remanded to the Fifth Circuit Court of Appeals instructing it to determine whether the inclusion of an "honest-services" mail-fraud theory in the case was harmless error under the standard applied in *Hedgpeth v. Pulido*, 555 U.S. 57 (2008) (per curiam).

In its opinion on remand, issued on April 6, 2011, the Fifth Circuit found that the inclusion of the invalid "honest-services" theory in the case was, indeed, harmless error. *United States v. Skilling*, ___ F.3d ___, 2011 WL 1290805 (5th Cir. Apr. 6, 2011).

At the outset of the opinion, the Fifth Circuit outlined the relevant standards of review, explaining that an instructional error may be determined to be harmless in either of two ways. First, under *Neder v. United States*, 527 U.S. 1 (1999), if it is clear from the record that the jury would have reached the same result absent the error, the inclusion of the invalid theory is harmless. Second, an erroneous instruction may be found to be harmless where it is clear from the record that the jury "necessarily found facts establishing guilt on a valid theory." *Skilling*, 2011 WL 1290805, at *2.

The Fifth Circuit cites only its own precedent - *United States v. Holley*, 23 F.3d 902 (5th Cir. 1994), and *United States v. Saks*, 964 F.2d 1514 (5th Cir. 1992) - in support of the second means:

> *Holley* and *Saks* stand for the proposition that legally erroneous jury instructions [are] harmless in fraud cases when the inevitable result of the fraudulent activity proved at trial established that the defendants participated in the scheme that justified their convictions on legally correct instructions.

*Skilling*, 2011 WL 1290805, at *2 *(quoting *United States v. Howard*, 517 F.3d 731, 738 (5th Cir. 2008)). But the rule is in fact universal (*see Pope v. Illinois*, 481 U.S. 497, 502-03 (1987); *Rose v. Clark*, 478 U.S. 570, 580-82 (1986)) and has been repeatedly observed in the Fourth Circuit.

Thus, in *United States v. Hastings*, 134 F.3d 235, 241-42 (4th Cir. 1998), the Fourth Circuit concluded that the trial court had

given an erroneous instruction defining the term "use" in the context of the statute criminalizing the "use" or "carrying" of a firearm during or in relation to a drug trafficking crime. Although conceding that the evidence at trial was insufficient to prove the element of "use" under a proper instruction, the court nonetheless affirmed the conviction:

> because the evidence, . . . is more than sufficient to warrant a conviction on the basis that [defendant] carried a firearm.'

*Hastings*, 134 F.3d at 238.

The court explained that a reviewing court may determine an instructional error to have been harmless by:

> ascertaining what evidence the jury necessarily credited in order to convict under the erroneous instruction and then considering whether that evidence . . . establishes an offense under a proper instruction.

*Id.* at 241.

The court later particularly addressed the task of the reviewing court where a jury has been instructed on alternative legal theories, one valid and one invalid:

> A reviewing court must attempt to ascertain what evidence the jury necessarily credited in order to convict the defendant under the instructions given. If that evidence is such that the jury must have convicted the defendant on the legally adequate ground in addition to or instead of the legally inadequate ground, the conviction may be affirmed.

*Id.* at 242.

The same principle is restated by the First Circuit in *United States v. Doherty*, 867 F.2d 47, 58 (1st Cir. 1989), a case cited by the Fourth Circuit in *Hastings* and by the Fifth Circuit in *Saks*:

> [a]n erroneous instruction on an element of the offense can be harmless beyond a reasonable doubt, if, given the factual circumstances of the case, the jury could not have found the defendant guilty without making the proper factual finding as to that element.

These harmless-error standards are applicable on direct appeal. The petitioner here on collateral attack must carry a heavier burden to prevail. *Brecht v. Abrahamson,* 507 U.S. 619, 633 (1993). But the convictions of Bryan in Counts One and Two of the Indictment clearly survive even under this direct-appeal standard.

As argued more fully in the United States' first response, the honest-services theories in Counts One and Two are derived from and completely dependent upon the property-fraud theories alternatively charged in each count.  That is, the defendant is charged with defrauding the state of his honest services solely and exclusively by defrauding others - the Arnold Agency in Count One and IGT in Count Two - of property.  Count One charges that Bryan defrauded the Arnold Agency out of the money it spent pursuing an advertising contract with the Lottery through a bid process.  If Bryan's subversion of this bid process is removed from the Count, nothing beside remains.  *See United States v. Osser*, 864 F.2d 1056, 1063 (3d Cir. 1988) (denying coram nobis relief on post-*McNally* review of honest-services mail-fraud charge since "[o]nce having found

4

that Osser had participated in the bid-rigging, the jury could not escape finding financial loss as a part of the scheme.")

Likewise, Count Two charges that Bryan defrauded the State of his honest services by subverting a state bid process and thereby cheating an unknowing bidder - IGT - out of the money it spent in preparing and presenting its bid. As in Count One, if the subversion of this bid process through which IGT was defrauded of money is removed from the charge, there simply is no charge at all.

Thus, the reviewer may rest confidently on the conclusion that the jury's guilty verdicts on Counts One and Two are based on its findings that Bryan had schemed to defraud the Arnold Agency and IGT of money. There is no other basis for either verdict, in the charge itself, the evidence or the arguments of counsel.[1] Petitioner may argue all he likes about the repetition of the words "honest-services" throughout the trial and how emphatic those references might have been but the inescapable and controlling fact is this: the jury could not have found Bryan guilty of these mail fraud charges - even under the honest-services theory - unless it

---

[1] One part of the Fifth Circuit's rationale for holding the erroneous "honest services" error harmless in *Skilling* was that the government's harmless-error argument was consistent with the indictment, which . . . did not emphasize any act of honest-services fraud that [was] not also an act of securities fraud." *Skilling*, 2011 WL 1290805, at *7 n.3. The government's position is even stronger here for in this case, the indictment in Counts One and Two does not even allege [much less "emphasize"] any act that was not, in and of itself, a part of a property fraud.

had found that Bryan had schemed to defraud the Arnold Agency and IGT of money.

The holding and reasoning in *Doherty* is perfectly parallel. In finding that the inclusion of invalid honest-services charging language in a mail fraud conspiracy count was harmless, the court observed that its review of the trial record made it:

> virtually inconceivable that the jury could have found these appellants guilty of conspiracy to commit mail fraud without believing that they were conspiring to deprive the Commonwealth of money, in the form of salary payments to improperly promoted officers.

*Doherty*, 867 F.2d at 58.

The *Doherty* court pointed to *Perholtz v. United States*, 836 F.2d 554 (D.C. Cir. 1988), where the indictment charged defendant with depriving the Small Business Administration of money through a kickback scheme and of its intangible right to be free from corruption. The court upheld the convictions, finding that the jury could not have returned a guilty verdict without finding the defendant had engaged in the kickback scheme:

> The scheme can be characterized as an "intangible rights" scheme only in the following sense: appellants, by defrauding the SBA of money through kickbacks, can be said by virtue of that very act of defrauding to be at the same time defrauding the SBA of [intangible rights] . . . . The indictment did not allege any scheme . . . other than the kickback scheme, and it is inconceivable that the jury could have disregarded the kickback scheme.

*Id.* at 59.

6

The same is true in this case.  Here the only fraudulent activity charged is the subversion of the two bid processes through which the identified victims were defrauded of property.  Since there is no other wrongdoing alleged or proven in support of either count, it is inconceivable that the jury's guilty verdicts on Counts One and Two did not involve it finding that the defendant had schemed to defraud the Arnold Agency and IGT out of property.

Therefore, the convictions in Counts One and Two of the Indictment survive under both the direct-appeal standards set forth in *Neder* - since it is clear that the jury would have reached the same result in the absence of the erroneous instruction - and in *Pope* and *Hastings,* since it is inescapably clear that the jury's guilty verdicts necessarily involved it finding that Bryan had schemed to defraud the Arnold Agency (Count One) and IGT (Count Two) of property.

The so-called "grave doubt" or "equipoise" test defined in *O'Neal v. McAninch*, 513 U.S. 432 (1995), is thus not applicable in this case.[2]  In *O'Neal*, the court was not faced with alternatively-charged legal theories, one valid and one invalid, but, rather, with an erroneous instruction "about the state of mind necessary for conviction."  *Id.* at 435.  Thus, *O'Neal* does not stand either

---

[2] The Fifth Circuit, in its opinion on remand, was unconcerned with *O'Neal* and abandoned the "impossible to tell" standard it had employed in alternative theory-error cases prior to *Pulido*. *Skilling*, 2011 WL 1290805, at *8 n.1.

for the proposition that (a) the court here must somehow attempt to divine which of the alternatively-charged theories the jury adopted or that (b) if the Court is in "grave doubt" or "equipoise" about which one of the two the jury used, it must grant petitioner relief.

What *O'Neal* indicates is that if, after considering the record as a whole, the court is left with grave doubt about whether an erroneous instruction was harmless, relief must be granted.

II. **The Jury's Guilty Verdict on Count Three Demonstrates That It Found Facts Sufficient to Support a Guilty Verdict Under the Intangible-Property Theory Approved in *Carpenter v. United States***

The jury's guilty verdict on Count Three of the Indictment may also be upheld under the harmless-error standard in *Pope* and *Hastings:* where a reviewing court is assured that a jury's guilty verdict on an invalid theory required them to find facts sufficient to support a verdict on a valid theory, the convictions may be sustained.

In Count Three, Bryan is charged with defrauding the State of his honest services through the exploitation of confidential information relating to stock prices.  Thus, this count, like Counts One and Two, is nothing more than a typical property-fraud scheme with honest-services language thrown in.  There is no doubt that confidential information constitutes property and that the exploitation of that confidential information for personal gain may

constitute a crime under either of the mail or wire-fraud statutes. *Carpenter v. United States*, 484 U.S. 19 (1987).  Here also the Court may rest assured that the jury's verdict on Count Three necessitated it finding all of the elements necessary for guilt under a *Carpenter* theory.  The only other fraudulent activity alleged in this count is Bryan's alleged receipt of gratuities, which is peripheral to the main thrust of the charge.  Count Three is primarily concerned with Bryan's exploitation of confidential information and his use of that information to make trades in the securities market.  Indeed, all of the wire transfers alleged in the count involve security trades.  It would have been impossible for the jury to have found these wire transfers were in furtherance of the scheme unless that scheme involved the exploitation of confidential information relative to those trades.  The Fourth Circuit observed of Count Three:

> Bryan's convictions for wire and securities fraud were based upon his trading in the shares of companies doing business with the West Virginia Lottery . . . Bryan made all of these trades on the basis of nonpublic, confidential information entrusted to him in his capacity as Lottery Director.

*United States v. Bryan* 58 F.3d 933, 939 (4th Cir. 1985), and concluded that the evidence submitted in support of this theory was sufficient:

> The jury was presented with ample evidence that Bryan . . . traded on confidential information.  Cf. *Carpenter*, 484 U.S. at 26

>     (confidential information is "property," the
>     deprivation of which can constitute wire
>     fraud.)

*Bryan*, 58 F.3d at 943.

Thus, here, as in Counts One and Two, it is clear that the jury's guilty verdict necessitated its finding facts sufficient to meet the elements of wire fraud under a valid theory.

### III. Bryan Cannot Show the Kind of Fundamental Error or Manifest Injustice Necessary to Prevail Under Coram Nobis Review

A writ of coram nobis is extraordinary relief and should only be granted to correct errors of the most fundamental character and "only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511-12 (1954). The reasons for this "rigorous burden of proof," as Judge Hall characterized it in his dissent in *United States v. Mandel,* 862 F.2d 1067, 1076 (4th Cir. 1988), are "obvious:"

>     Inroads on the concept of finality tend to
>     undermine confidence in the integrity of our
>     procedures.  Moreover, increased volume of
>     judicial work associated with the processing
>     of collateral attacks inevitably impairs and
>     delays the orderly administration of justice.
>     Because there is no limit on the time when a
>     collateral attack may be made, evidentiary
>     hearings are often inconclusive and retrials
>     may be impossible if the attack is successful.

*United States v. Addonizio*, 442 U.S. 178, 185 n.11 (1979) (citations omitted) (habeas corpus); *quoted in United States v. Dellinger*, 657 F.2d 140, 144 (7th Cir. 1981) (coram nobis).

Thus, the Seventh Circuit, considering relief under coram nobis in an alternative-theory case, has held that so long as the indictment in the case stated a legally valid theory, there was no entitlement to relief even if the evidence was insufficient to support the theory and the jury was not instructed on the theory. *United States v. Bush*, 888 F.2d 1145, 1148 (7th Cir. 1989).  (*See also United States v. Keane*, 852 F.2d 199, 205 (7th Cir. 1988) ("As we have emphasized, however, and as Keene's lawyer conceded at oral argument, if the indictment states an offense, that is the end of things for relief in the nature of coram nobis.")  The Third Circuit, in a case where alternative theories were charged, held that no relief was in order where one of the theories charged was legally valid and there was sufficient evidence to support the theory, whether the jury was actually instructed on the valid theory or not.  *United States v. Stoneman*, 870 F.2d 102, 104 (3d Cir. 1989) ("loss of money was implicit in the intangible rights scheme.").

The First Circuit, denying a petition for relief under Title 28 § 2241, said "Most courts have required a credible allegation of actual innocence to access the savings clause." *Trenkler v. United States*, 536 F.3d 85, 99 (1st Cir. 2008).  Certainly no lower standard would be applied in a coram nobis case, where the petitioner is no longer in custody.

11

Of course, these circuit court holdings are not binding precedent here, but they do demonstrate that the type of error that might have mandated corrective action on direct appeal does not necessarily require reversal on coram nobis. In these extraordinary, collateral attacks, the law takes cognizance of the societal interest in finality and the nearly insurmountable burden the government would face in attempting to re-try an ancient case over against the diminished interest of the petitioner, who is no longer in custody. See *United States v. Keogh*, 391 F.2d 138, 148 (2d Cir. 1968), and *Keane*, 852 F.2d at 206. Thus, rather than automatically reversing once error has been isolated, courts in coram nobis cases look to determine whether the case as a whole demands intervention "to achieve justice."

Viewing this case from that perspective, reversal of these convictions is out of the question. In this case, the assurances that substantial justice was done are far greater than those that have been considered sufficient in other coram nobis cases.

Here, of course, it is undeniable that the Indictment in Counts One and Two charged alternative mail-fraud theories, one of which was, and remains, legally viable. The alternative-theory charging language in those two counts could not be clearer. It is also inescapable that the evidence submitted in support of these counts was more than sufficient to support guilty verdicts under the legally-viable property theory. Moreover, it simply cannot be

denied that the jury deciding the case had to find facts that would have established guilt under the valid property-fraud theory charged in Counts One and Two, even if they finally adopted the honest-services theory, since the only means of honest-services fraud charged or proven was the subversion of the bid processes through which innocent bidders were defrauded of property.

It is likewise clear that the charge in Count Three of the Indictment does allege a valid offense.  That charge, read in its entirety, clearly and undeniably accuses Bryan of fraudulently appropriating property, that is, confidential, insider information consistent with the legal theory approved in *Carpenter v. United States,* 484 U.S. 19 (1987).  It is just as clear that the jury simply could not have found Bryan guilty of this charge without concluding that Bryan had defrauded the State of that property.

**IV.  The Jury's Guilty Verdict on Count Four Precludes Any Finding That Bryan Has Suffered an Injustice**

Moreover, it is nonsense to argue that the petitioner here has suffered injustice or was wrongfully punished when the conclusion is now undeniable that he was justly convicted of securities fraud under Count Four of the Indictment.  Not only do we have the jury's guilty verdict on the count, we have the Fourth Circuit's express agreement that the evidence was sufficient to convict Bryan under the "misappropriation theory" employed by the prosecution:

13

> Bryan's conduct clearly constituted criminal activity under this theory of misappropriation.

*United States v. Bryan*, 58 F.3d 933, 945 (4th Cir. 1995). Of course, we are now completely assured that the misappropriation theory the government employed in this case was legally valid. *United States v. O'Hagan*, 521 U.S. 642, 650 (1997).

It is not suggested that this Court is now in a position to re-instate the legally-valid conviction of Bryan on Count Four. What the rule in *O'Hagan* does, however, is further undermine any argument by Bryan that this record supports any claim of "fundamental error" or cries out for correction. We are as certain as we can be about anything in the legal system that Bryan was properly convicted under a viable legal theory in Count Four. This mitigates against any grant of the extraordinary and equitable relief contemplated under coram nobis that should only be granted to correct a manifest injustice. *United States v. Morgan*, 346 U.S. 502 (1954).

**V.    Bryan Has Waived Any Prejudicial-Spillover Argument as to Count Five and Therefore must Prove That He Is Actually Innocent of That Charge and All Other Charges That Were Available to the Prosecution, Including the Charges in Counts One Through Four, in Order to Obtain Relief under Coram Nobis**

Finally, the petitioner simply cannot prevail on his lately-raised "prejudicial-spillover" argument related to his conviction under Count Five of the Indictment (False statements before a Grand Jury). He asserts that since the other crimes he was charged with

and convicted of "did not exist," most of the evidence admitted in the trial should never have been before the jury and, thus, unfairly prejudiced the jury in their conviction of him under Count Five. The insurmountable flaw in Bryan's argument here is that the "other crimes" did exist and do exist. Given the ruling in *O'Hagan*, there is no real argument left against the viability of the securities-fraud charge in Count Four. The fact that the Fourth Circuit was wrong about the prosecution's misappropriation theory for a time does nothing to diminish the integrity of the theory or alter the conclusion that all of the evidence adduced in support of that theory was properly before the jury. Moreover, the mail and wire fraud counts included legally-viable theories that were supported by all the evidence adduced at trial in proof of Counts One, Two and Three.

The procedural defect in Bryan's prejudicial-spillover argument is one of waiver. He concedes he did not raise it at trial or on direct appeal. Bryan cannot raise for the first time here on coram nobis an argument that was available to him and never raised at the trial level. Indeed, given his failure to mention the argument at the trial level, Bryan would even have been precluded from raising the "prejudicial spillover" issue on direct appeal.

In the first place, it is impossible for Bryan to show that he is actually innocent of Count Five - the false statements count.

His attack on the conviction here - other than the waived "prejudicial-spillover" argument - is a sufficiency of the evidence argument that is contradicted by the trial jury's verdict and absolutely forestalled by the Fourth Circuit's decision on direct appeal, considering and denying the same argument.  ("[w]e are satisfied that the prosecution's repeated inquiry into whether 'anyone else' contributed to the RFP provided the jury an adequate basis upon which to conclude that Bryan . . . deliberately lied to the grand jury . . . ."). *United States v. Bryan*, 58 F.3d 933, 960 (4th Cir. 1995).  It is well-settled that arguments made and dispensed of on direct appeal may not be resurrected on collateral attack.  *United States v. Boeckenhaupt*, 537 F.2d 1182 (4th Cir. 1976).

Moreover, given that he is now in a position of collateral attack, he may not prevail in this newly-raised argument unless he can show that he is "actually innocent" not only of this charge, but of any charge that was available to the prosecution at the time of the indictment.  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  This, of course, must include any of the other charges in the indictment.

Given that the jury found Bryan guilty of securities fraud in Count Four; that the Fourth Circuit observed that the evidence was sufficient to sustain the jury's verdict on this Count under the prosecution's "misappropriation theory;" and the Supreme Court's later holding that the "misappropriation theory" is, in fact a valid one, it is impossible for Bryan to contend he is "actually innocent" of this charge. Indeed, his only response to this argument is to suggest it is an untimely plea for the re-instatement of the conviction on that count. Of course, it is not. The point is, the jury's conviction of Bryan on the Count is legally and factually justified and, therefore, Bryan cannot make the showing of 'actual, factual innocence, as opposed to legal insufficiency' that is demanded of him under *Bousley* in this context.

Finally, as argued more fully above and in earlier briefings, the convictions of Bryan on Counts One, Two and Three also withstand post-*Skilling* review. It is simply undeniable, given the nature of those charges and the evidence adduced at trial, that the jury, in returning its guilty verdicts, concluded that Bryan had schemed to defraud others of property.

CONCLUSION

Based on the foregoing arguments and authorities, the United States submits that the coram nobis relief sought by the petitioner should be denied.

                        Respectfully submitted,

                        R. BOOTH GOODWIN II
                        United States Attorney

By:   s/Larry R. Ellis
      LARRY R. ELLIS, WV Bar No. 1122
      Assistant U.S. Attorney
      P.O. Box 1713
      Charleston, WV  25326
      Telephone:  (304) 345-2200
      Fax:  (304) 347-5706
      E-mail: larry.ellis@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "Response of the United States to Petitioner's Supplemental Brief on Standards of Review That Govern This Coram Nobis Proceeding" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this the 27th day of May, 2011, to:

>Richard Neely
>NEELY & CALLAGHAN
>159 Summers Street
>Charleston, WV 25301

>By: s/Larry R. Ellis
>LARRY R. ELLIS
>WV Bar No.  1122
>Assistant U.S. Attorney
>P.O. Box 1713
>Charleston, WV  25326
>Telephone:  (304) 345-2200
>Fax:  (304) 347-5706
>E-mail: larry.ellis@usdoj.gov