IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston


**ELTON E. BRYAN,**

      Petitioner

                                 **Civil Action No. 2:10-cv-01196**

v.                                **Judge Copenhaver**

**UNITED STATES OF AMERICA**

      Respondent


## PETITIONER'S OBJECTIONS TO MAGISTRATE'S PROPOSED FINDINGS AND CONCLUSIONS

### I
### *INTRODUCTION*

Petitioner Elton E. Bryan (Butch Bryan) hereby files his specific written objections to Magistrate Judge Stanley's proposed Findings and Recommendations. ECF 136. Petitioner specifically objects to the following sections of the Proposed Findings and Recommendations: (1) all findings of fact and conclusions of law related to Petitioner's conviction under Count Three of the Indictment, pp. 140-155; all findings of fact and conclusions of law related to Petitioner's conviction under Count Five, pp. 155-161; and, (3) the Magistrate Judge's conclusion that *corum nobis* relief be denied as to Counts Three and Five, p. 161, ECF 136.

### II
### *Criminal Law Overview*

The basic problem in Butch Bryan's case is, at heart, systemic: Both the insider trading

law and the mail/ wire fraud law suffer from a "vagueness" that runs counter to the

Constitution's *ex post facto* provision, *U.S. Const.*, Art. 1, §9, cl. 3. Both insider trading and

mail/wire fraud allow defendants to be surprised because conduct they thought legal has led to a

successful criminal prosecution.   Here is Judge Easterbrook of the 7th Circuit talking about the

vagueness with the mail fraud statute:

> "A mails B an invitation to a surprise party for their mutual friend C.  B drives his
> car to the place named in the invitation.  But there is no party; the address is a vacant lot;
> B is the butt of a joke.  The invitation came by post; the cost of gasoline means that B is
> out of pocket.  The prosecutor said [at oral argument] that this indeed violates Sec. 1341,
> but that his office pledges to use prosecutorial discretion wisely.  Many people will find
> this position unnerving (what if the prosecutor's policy changes, or A is politically
> unpopular and the prosecutor is looking for a way to nail him?)... [T]he idea that practical
> jokes are federal felonies would make a joke of the Supreme Court's assurance that sec.
> 1341 does not cover the waterfront of deceit."

United States v. Walters,  997 F.2d 1219 at 1224 (7th Cir. Ill., 1993).

The basic jurisprudential problem with both mail/wire fraud and insider trading is that

Congress refuses to act to define specific crimes to give defendants fair notice, yet society wants

to have criminal sanctions for bad behavior. That conflict, then, has created a process by which

the Courts get into the business of creating new "common law" crimes by *ex post facto*

decisional law. In Butch Bryan's case, the Fourth Circuit refused to go along with the insider

trading *ex post facto* conviction and reversed Count Four—insider trading under the

"misappropriation theory"-- in the original appeal. Then, fifteen years later, the U.S. Supreme

Court has declined to go along with Counts One, Two and Three because of the vagueness of

mail/wire fraud  prosecutions for deprivation of "honest services."  *Skilling v. United States*,

___U.S.___, 130 S.Ct. 2896 (2010). In order to avoid vagueness concerns, the Supreme Court

held in *Skilling* that §1346 criminalizes <u>only</u> schemes to defraud involving bribery or

kickbacks—two things of which Butch Bryan was never accused. Thus, under *Skilling*, four of

five counts of Butch Bryan's indictment were constitutionally flawed for vagueness.

The *ex post facto* problem became apparent in the original appeal of this case to the

Fourth Circuit when the Fourth Circuit found that prosecution for securities fraud under a

"misappropriation theory" was improper.  In that regard, the Fourth Circuit said:

> "We conclude that neither the language of section 10(b), Rule 10b-5, the Supreme
> Court authority interpreting these provisions, nor the purposes of these securities
> fraud prohibitions, will support convictions resting on the particular theory of
> misappropriation adopted by our sister circuits. Section 10(b), insofar as concerns
> us, see infra pp. 18-19, prohibits only the use of deception, in the form of material
> misrepresentations or omissions, to induce action or inaction by purchasers or
> sellers of securities, or that affects others with a vested interest in a securities
> transaction. In contravention of this established principle, the misappropriation
> theory authorizes criminal conviction for simple breaches of fiduciary duty and
> similar relationships of trust and confidence, whether or not the breaches entail
> deception within the meaning of section 10(b) and whether or not the parties
> wronged by the breaches were purchasers or sellers of securities, or otherwise
> connected with or interested in the purchase or sale of securities. **Finding no**
> **authority for such an expansion of securities fraud liability -- indeed, finding**
> **the theory irreconcilable with applicable Supreme Court precedent -- we**
> **reject application of the theory in this circuit. We hold therefore that the**
> **district court  plainly erred in instructing the jury that it could convict Bryan**
> **of securities fraud on the basis of the misappropriation theory of Rule 10b-5**
> **liability.** See, e.g., United States v. Olano, 123 L. Ed. 2d 508, 113 S. Ct. 1770
> (1993); United States v. Piccolo, 835 F.2d 517, 519 (3d Cir. 1987) (jury
> instructions "allowing conviction for conduct outside the proscription of the mail
> fraud statute" constitute plain error affecting substantial rights)."

58 F.3d 933 at 944 [emphasis added, footnotes omitted.]  This, then, is the rule of this case, and

the frequent references to *United States v. O'Hagan*, 521 U.S. 642 (1997) as somehow calling

into question the Fourth Circuit's reversal of Butch Bryan's insider trading conviction are

completely misplaced.  Furthermore, O'Hagan was in the position of a classic insider—

specifically he was the lawyer for a company considering a tender offer-- and it is a fair

inference that the Supreme Court would have been less enthusiastic about approving the

"misappropriation theory" in Butch Bryan's circumstances than in O'Hagan's circumstances even today.[1] For the Government and the Magistrate Judge to continue to harp on how the Fourth Circuit was wrong to reverse Mr. Bryan's conviction contravenes double jeopardy principles; however, the very argument itself highlights the whole indeterminacy / *ex post facto* problem.[2]

The Magistrate Judge's parade of creative devices to **avoid** overturning an invalid and unjust conviction causes a lawyer who does not regularly practice federal criminal law to have grave reservations about whether there is, indeed, an impartial application of neutral principles in Federal criminal law. Let us begin, then, with the arcane area of procedural default.

### III
#### *Objections to Findings on Count Five*
#### *Procedural Default*

The learned Magistrate Judge has found that Mr. Bryan defaulted procedurally on the issue of his perjury conviction because he failed to argue that, because the U.S. Supreme Court at some future date might determine that he could not be convicted of mail fraud under an honest services theory, his perjury conviction should be overturned because it was based on

---

[1] O'Hagan was a partner in a law firm that represented a company regarding a potential tender offer for the common stock of another company. During the representation, respondent purchased call options for the other company's stock and sold them for a significant profit. A jury convicted respondent of securities fraud. The Supreme Court held that criminal liability under § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C.S. § 78j(b)) may be predicated on the misappropriation theory, but here there was a formal lawyer/client obligation of confidentiality and the lawyer was in exactly the same position as an insider corporate executive.

[2] The attempt by the United States to resurrect the insider trading conviction and the recommendation from Magistrate Judge Stanley implicates double jeopardy principles, the law of the case doctrine, as well as *ex post facto* concerns. "It has been well-settled law for nearly two hundred years that the relevant date for *ex post facto* analysis is the date of the offense, not the date of prosecution. *Calder v. Bull* 3 U.S. (3 Dall.) 386, 390-91, 1 L.Ed. 648 (1798); *Weaver v. Graham* 450 U.S. 24, 30-31, 67 L.Ed. 2d 17, 101 S.Ct. 960 (1986); *Marshall v. Garrison*, 659 F. 2d 440, 442 n.3 (4th Cir. 1981)." *United States v. Juvenile Male*, 819 F. 2d 468 (4th Cir. 1987).

inadmissible evidence of other crimes.  Well…how about arguing that incarceration will be cruel and unusual because a meteor might hit the prison, or arguing that the conviction is invalid because a juror took a bribe even though there is no evidence of such a bribe?

Indeed, if it were to come out after conviction and appeal that a juror had taken a bribe, would the defendant be foreclosed from *coram nobis* relief because he had failed to raise that in his appeal? Would he, because the proceeding is post-conviction, be subject to a "harmless error" analysis? The only fair application of the "procedural default" rule is to require a defendant to raise on appeal issues that a competent lawyer would believe: (1) have a chance of success; and, (2) will not muddy the waters so as to make it difficult to prevail on an issue that <u>has</u> a chance of success.

What the Magistrate Judge's opinion implies is that the federal criminal defense bar should meet in conclave and compile a laundry list of every possible error that could, under any wild exercise of the imagination, possibly arise as a result of changes in the law or after-discovered evidence. Then, of course, every brief ever filed in a circuit court or the Supreme Court would contain that laundry list as "additional errors" raised.

But aren't there page limitations on briefs?  And don't real lawyers speaking to real judges want to focus on issues that <u>at the time</u> they reasonably believe can be won? What kind of appellate practice would we have if every lawyer were required to keep in mind that he was making a record for *habeas corpus* or *coram nobis* relief rather than trying to win the appeal? Mr. Bryan believed that he could win reversal of the perjury count based on the Fourth Circuit's review of the evidence supporting that conviction, and he came very close. Why would he waste valuable pages making the argument that after the Fourth Circuit overturned <u>all</u> four other

convictions they should then overturn the perjury conviction on evidentiary spillover grounds?
He could, of course, have argued that the Government shouldn't try all offenses together—a
surefire loser!

In light of the reversal of Mr. Bryan's conviction for securities fraud by the Fourth
Circuit in 1994 and the Magistrate Judge's decision on 15 March 2012 that *Skilling* mandates
overturning Counts One and Two for mail fraud under §1346, it would be a travesty of criminal
procedure to allow the perjury conviction to stand on the <u>exclusive</u> grounds of "procedural
default."  In this regard, it is important to remember that even at the time the Fourth Circuit
sustained the perjury conviction, the Fourth Circuit <u>itself</u> had misgivings concerning whether the
required showings for perjury had been made. This is such an important issue that it is worth
quoting the Fourth Circuit opinion at length:

> Bryan finally challenges his conviction for perjury under oath before a grand jury. See 18
> U.S.C. § 1623. This conviction relates to Bryan's responses to prosecution questions
> before a federal grand jury regarding the drafting of the RFP for the video lottery
> contract. The government contended at trial that Bryan deliberately lied in response to
> government questioning to cover up the fact that VLC representatives had participated in
> the drafting of the RFP.
>
> The grand jury questioning on which the perjury conviction is based proceeded as
> follows: Q. Who wrote the RFP? A. The RFP was put together by a committee of
> specialized people at the Lottery. . . .Q. I want you to tell me everybody on the committee
> who had any input into the document. . . .
>
> [Omitted here are several questions and answers pertaining to Bryan's identification of
> the committee members who worked on the RFP.] Q. Who else participated in the RFP?
> A. Tammy Gunnoe is a specialist in the division of marketing. All of those components
> are required in this proposal and they all worked on this document.Q. Who else worked
> on the RFP? A. I obviously had some input on it. . . . I made recommendations that I
> would like to see and they worked from that. . . .Q. Anyone else have input into the
> drafting of the RFP, as far as you know? A. Well, they may have called upon people
> within their sections to provide information. Q. As far as you know, did anyone else have
> input into it? A. No, they were the people that I assigned to prepare it. Q. Okay, and so
> we would have to ask them if they received input from others, right? A. Yes, Ma'am.

Appellee's Br. at 34-35. Bryan contends that the questioner's initial focus on "everybody on the committee who had input into the document" led him to believe that the entire line of questioning was concerned only with which employees at the Lottery worked on the RFP. Appellant's Br. at 45.

The federal statute proscribing perjury before a grand jury provides that Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined . . . or imprisoned.

18 U.S.C. § 1623. In interpreting the analogous federal perjury statute, 18 U.S.C. § 1621, the Supreme Court has stated that the perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner -- so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry.

Bronston v. United States, 409 U.S. 352, 360, 34 L. Ed. 2d 568, 93 S. Ct. 595 (1973). The Court also stated that "precise questioning is imperative as a predicate for the offense of perjury." Id. at 362.

**<u>Given the Supreme Court's command to construe the perjury statute narrowly, we are sympathetic to Bryan's claim</u>. <u>The questioner's initial focus on committee members could well have led Bryan to believe that the question, "Did anyone else have input into it," only pertained to committee members. Bryan's response of "No, they were the people that I assigned to prepare it" evinces such an understanding</u>**. Nonetheless, we are satisfied that the prosecution's repeated inquiry into whether "anyone else" contributed to the RFP provided the jury an adequate basis upon which to conclude that Bryan understood that the focus of the questioning had changed from the committee members to anyone else who might have had input into the RFP and that he deliberately lied to the grand jury when he answered that no one else had been involved.

*Bryan* at 960 [emphasis added.]

Imagine that a person were indicted for only one count of lying before the grand jury and no other charges. Yet during the course of the trial, evidence was admitted over objection that the Defendant was a rapist, that he had once burned down his mother's house, and that he had recently been found with child pornography on his computer. Clearly introducing this evidence would be prejudicial and contrary to Rule 404(b), *Fed. R. Evid.* which says:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not

admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The Magistrate Judge's opinion recites all the evidence of "other crimes, wrongs or acts" that were presented to the jury during the course of the trial and that were entirely irrelevant because they were introduced in support of Counts One, Two, and Four—all of which have now been determined either by the Fourth Circuit or the Magistrate Judge to be invalid.

In the real world, everyone knows that the perjury count was an afterthought! The prosecution for perjury essentially used evidence proving crimes that didn't exist! And, because the Supreme Court has found the application of the mail and wire fraud statutes unconstitutional, Mr. Bryan's trial was rife with constitutional error. Therefore, the conflation of the perjury prosecution with the mail and wire fraud prosecutions must be shown to be harmless beyond a reasonable doubt![3] *Chapman v. Cal.,* 386 U.S. 18 (1967); accord *Brecht v. Abrahamson,* 507 U.S. 619, 630 (1993). Ironically, however, the Magistrate Judge gets around the *Brecht* standard by holding that there was procedural default because Mr. Bryan didn't raise and argue an error that would have appeared entirely frivolous at the time of the appeal.

---

[3]"There is little, if any, difference between our statement in Fahy v. Connecticut about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our Fahy case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was **harmless beyond a reasonable doubt**."

*Chapman* at p. 24, emphasis added.

In light of *Chapman* and *Brecht*, the Court must look at what a proper conviction for perjury would have looked like: Had Mr. Bryan been tried correctly, then the only thing the jury would have decided would have been whether Mr. Bryan was guilty of perjury. But in the actual 1994 prosecution, the perjury allegation was simply garbage, kitchen-sink part of the indictment[4] (designed, presumably, to enhance the likelihood of a plea); it certainly was not the primary focus of the trial. In a proper trial, however, it would have been the entire focus of the trial.

The Magistrate Judge has conceded that but for the procedural default, the perjury conviction should be over-turned. p. 161, ECF 136. Ironically, the Magistrate Judge spends a great deal of time discussing whether Mr. Bryan is "actually innocent" of the perjury count. Apparently the Magistrate Judge concludes that unless Mr. Bryan can show he is "actually innocent" of perjury, his entirely understandable failure to raise the evidentiary spillover issue in the Fourth Circuit precludes the perjury conviction being overturned now. But at the time, raising that issue in the Fourth Circuit would have been like the thirteenth chime of a ridiculous clock— not only in and of itself absurd, but also casting doubt on the validity of the other twelve!

Strangely, the perjury conviction did no real harm in the context of the original case. After all, all the sentences were to run concurrently, and the sentencing guidelines made the wire fraud and securities fraud convictions substantially more serious than the perjury conviction. Furthermore, Mr. Bryan was going to lose his right to own firearms, be debarred from serving in certain public offices, be debarred from participating in certain governmental activities and be prohibited from joining certain organizations regardless of whether he had one federal felony conviction or five. That, then, probably entered into the Fourth Circuit's decision

---

[4] "[W]e are admonished that we may not as judges ignore what we know as men..."

*United States v. Maze*, 414 U.S. 395, 403 (1974).

to affirm the perjury conviction. But all the Fourth Circuit said after pointing out the infirmities of the perjury evidence was that the jury's verdict could be sustained; in other words, that the jury was not <u>clearly</u> wrong!

But now the restoration of Mr. Bryan's civil rights depends upon the reversal of his perjury conviction which, obviously, was tainted by the admission of mountains of "inadmissible" Rule 404(b) "other bad acts" evidence.

## IV

### *Count Three*
### *The Wire Fraud Conviction*

With regard to sustaining the conviction under Count Three, the Magistrate Judge has twisted legal reasoning like a pretzel!  The Magistrate Judge reasons that because Mr. Bryan did not <u>argue</u> to the Fourth Circuit that the <u>wire</u> fraud statute was unconstitutionally vague, he is in procedural default. p. 140 ECF 136.  But Mr. Bryan <u>did</u> argue that 18 U.S.C. §1346, which made deprivation of honest services an offense under 18 U.S.C. §1341 (mail fraud) and 18 U.S.C §1343 (wire fraud) was unconstitutionally vague because the Magistrate Judge has found that he raised the §1346 "void for vagueness" issue when she overturned mail fraud convictions under Counts One and Two.

Simply as a <u>factual</u> matter, Mr. Bryan did, indeed, raise the issue of unconstitutionality of Count III on vagueness grounds. In Mr. Bryan's opening brief in the Fourth Circuit, Mr. Bryan spends pp. 24 through 26 arguing <u>exactly</u> the *Skillings* issue with regard to <u>all</u> counts. Specifically, on page 26 Mr., Bryan said:

> At the very least, the court, under the circumstances of the evidence in this case, erred when it instructed the jury that, "It is not necessary that the scheme be one which violates some particular state statute or regulation or that it has as its goal

> something which is a crime in and of itself. Rather for the purpose of the mail
> fraud statute , any scheme involving deception that employs the mails in its
> execution that is contrary to public policy and conflicts with accepted standards of
> moral uprightness, fundamental honesty, fair play and right, may constitute a
> quote 'scheme or artifice to defraud."

In the pages of Mr. Bryan's brief immediately preceding the section specifically devoted to Count III, Mr. Bryan explicitly argues, consistent with the quote above, that he cannot be guilty of mail fraud because he committed no recognized crime and that his conviction for mail fraud without some predicate illegal act was unconstitutionally infirm on vagueness grounds.

Now with that extensive argument for background, on page 27 under the heading of "Issue III," Mr. Bryan explicitly raises the *Skilling* issue when he says:

> The trial court's failure to enter judgment of acquittal on Count Three (wire fraud)
> insofar as the same relies upon deprivation of the citizens of West Virginia of
> their right to honest services in the purchase of G-Tech stock when there was no
> benefit or gain to appellant and no proof of actual or constructive fraud,
> constituted plain error.

Mr. Bryan then clearly reasserts the *Skilling* issue on page 1 of his Reply Brief in the Fourth Circuit.[5] *Skilling* says no conviction for deprivation of honest services absent evidence of bribery or kickback. And that was exactly the argument that Mr. Bryan made to the Fourth Circuit with regard to his wire fraud conviction under Count III!! And this was also the argument that the Government countered in its brief, pp. 23-24. How can the Magistrate Judge say that there was procedural default?  In order to avoid "procedural default" in post-conviction cases, must every argument, no matter how generally applicable to numerous counts, be repeated verbatim time after time, page after page, heading after heading in order to avoid "procedural default?"

---

[5] "The trial court's failure to dismiss or enter judgment of acquittal on Count Three (wire fraud) insofar as some [sic] relies on deprivation of citizens of West Virginia of their right to fair and honest government services in the purchase of G-Tech stock when there was no benefit or gain to appellant and no proof of actual or constructive fraud constituted plain error."

Then, necessary to sustaining the conviction under Count Three, the Magistrate Judge goes on to hold that Mr. Bryan can't show sufficient "prejudice" to overcome his "procedural default." p. 142 ECF 136. There was <u>no</u> "procedural default," but assuming that there were, that argument is also disingenuous.

With Count Three, procedural default doesn't work because the crime alleged in Count Three is not a crime under *Skilling*.  Count Three conflated two separate unconstitutional crimes: The first was insider trading under the misappropriation theory, namely the improper use of confidential information; the second was deprivation of honest services through the misappropriation of confidential information. The issue of the vagueness of these crimes <u>was</u> raised by Mr.Bryan in the assignment of error relating to the District Court's jury instruction quoted *supra*.

With regard to Counts One and Two, the Magistrate Judge concedes that:

> …the jury instructions included both the honest services mail fraud theory as well as the property fraud theory as to Counts One and Two. Because one of those theories, honest services mail fraud, is invalid under *Skilling*, a harmless error analysis is necessary… The undersigned proposes that the presiding District Judge find that the *Skilling* error had a substantial and injurious influence in determining the jury's verdict on Counts One and Two.

If, for a moment we return to the pretzel-like twisting of facts and law, we see that with regard to Count Three, the Magistrate Judge concedes that:  "Although <u>the United States has **not** challenged Petitioner's Petition on the grounds of procedural default</u>, a close review of the Fourth Circuit's decision reveals that Petitioner did not previously challenge Count Three on constitutional grounds."  [p. 140 ECT 136, emphasis added.]  But the reason that the United States didn't challenge Petitioner's petition on grounds of procedural default is that <u>there</u> <u>was</u> <u>no</u>

"procedural default."  Section 1346 applies both to mail fraud and wire fraud, and it was specifically challenged on void for vagueness constitutional grounds in Mr. Bryan's appeal, as the quotes above from the Magistrate's recommended decision clearly reveal. Thus, even the Government itself believes that a "procedural default" argument on Count Three is improper: The Wire Fraud Statute, §1343 is simply the Mail Fraud Statute, §1341 rewritten to include wire communications.  And §1346 concerning "honest services" applies to both.[6] If, then, Mr. Bryan argued that the mail fraud statute is unconstitutionally vague, the Magistrate Judge's saying that Mr. Bryan "procedurally defaulted" by not raising the unconstitutionality of the wire fraud statute is disingenuous beyond a reasonable doubt!

Obviously the same infirmities that apply to Counts One and Two apply to Count Three as well. The jury was instructed that they could convict under all three counts if they believed

---

[6]  The relevant part of both statutes, namely the part that was specifically quoted in the Indictment and  is subject to void for vagueness attack, and the only part on which the Judge instructed the jury in Butch Bryan's case is as follows:

§ 1341. Frauds and swindles  [mail fraud]

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,…

§ 1343. Fraud by wire, radio, or television

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises…

§ 1346. Definition of "scheme or artifice to defraud"

For the purposes of this chapter [18 USCS §§ 1341 et seq.], the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

that Mr. Bryan deprived the citizens of West Virginia of his honest services, and the conduct

sustaining the conviction did not need to be a crime. That, indeed, was the focus of the closing

argument by the Government. Any lawyer who regularly tries cases knows that only two things

really count in a jury trial: the opening statement and the closing argument! In this case, the

Court's charge is largely boilerplate; the charge spends almost no time whatsoever on what acts

might constitute mail or wire fraud. Indeed the <u>total</u> discussion of this issue by the Court

consisted of the following:

> In both statutes I have spoken of "scheme" and "artifice". The word
> "scheme" and "artifice" as used in the mail fraud and wire fraud statutes includes
> any plan or course of action intended to deceive others and to obtain by false or
> fraudulently [sic] pretenses money or property from the person or organization so
> deceive<u>**d. For the purposes of both mail fraud and wire fraud statutes, the**
> **terms "scheme or artifice to defraud" includes a scheme or artifice to deprive**
> **another of the intangible right of honest services.**</u> [emphasis added.]

Interestingly, **<u>nowhere</u>** else in the instructions is **<u>any</u>** mention made of use of confidential

knowledge of the State's plans with regard to GTech as a theft of <u>property</u>. Therefore, applying a

little legal realism, it becomes obvious that the **<u>entire</u>** focus of this trial was upon the

"deprivation of honest services" [§1346] component of then-existing mail and wire fraud

jurisprudence.

   And the truth of this observation is completely sustained by the focus of the closing

arguments: Nowhere does Mr. Ellis at <u>any</u> point call the jury's attention to a "theft of property"

theory giving additional grounds supporting conviction; rather, Mr. Ellis's entire focus was upon

the purchase of the GTech stock as an instance of lack of honest services! The idea that this trial

at any point focused on fraudulent deprivation of **<u>property</u>** is entirely a figment of the Magistrate

Judge's *coram nobis* imagination!  The Magistrate Judge reasons as follows:

> Thus, despite the error at trial related to the honest services aspect of Count Three,

such error did not substantially affect the jury's verdict….

The instant matter presents a strong case for a finding of harmless error. On the verdict form the jury marked the wire transfer for the purchase of GTech stock on August 17, 1992, as the transfer it unanimously found petitioner to have made in furtherance of the scheme. The jury explicitly indicated on the verdict form that it found Petitioner guilty of the one aspect of Count Three that required a finding of deprivation of property, i.e., confidential business information related to GTech.

pp. 151-152 ECT 136.

Looking at Volume VII of the *Transcript*, i.e., the volume that contains closing arguments and the jury instructions, there are four specific references to the fact that the mail fraud and wire fraud counts are predicated on deprivation of honest services. Thus, on page 56 of the Government's closing argument deprivation of honest services is specifically referenced, and again on page 91 during the Government's rebuttal argument deprivation of honest services is referenced.[7] In the Defendant's closing statement, on pages 82-83 and again on page 88, the only theory of mail or wire fraud that the Defendant attempted to rebut was the deprivation of honest services.[8]

---

[7] "What happened after these forms were destroyed? The West Virginia Lottery Commission, a statutory body created by statute, meeting in formal open session in front of the press, the public and everybody was defrauded. They were defrauded out of this defendant's honest services. He owes them a duty of honesty. He works for them in a sense, and he has a duty to be honest with them. It just doesn't work if he doesn't. It's just a sham if he's not honest.

Vol. VII, p. 56 (Mr. Ellis's close.)

"Mr. Jones has difficulty reconciling the term honesty with government. I submit to you, ladies and gentlemen, that is not a difficult concept to separate at all. Perhaps it was for Mr. Bryan. Perhaps it's difficult for Mr. Jones. But it is not a difficult concept. The citizens of this state have a right to expect honesty from its public officials. No more, no less. And what happened during this man's tenure as lottery director can in no way be described as honesty.

Vol. VII, p. 91 (Mr. Miller's rebuttal.)

[8] "Now, that's their case for insider trading and dishonest government or honest government. Has there been facts set forth here to you members of the jury to demonstrate to you, to prove to you beyond a reasonable doubt this elusive term "dishonest government". Or

Therefore, when we look at the most important, as well as the most structured part of the trial, i.e., the Court's instructions and the closing arguments, only one theory that supports a conviction for wire fraud under Count Three emerges, namely deprivation of honest services. Judge Haden spoke specifically <u>only</u> of how a deprivation of honest services would support mail and wire fraud convictions, and Mr. Ellis and Mr. Miller argued <u>only</u> that Mr. Bryan was guilty because he deprived the State of his honest services.

Thus, the Magistrate Judge has engaged in two improper exercises of disingenuous manipulation of inapposite federal criminal law principles: In order to sustain the conviction under Count Three, the Magistrate first found a phantom "procedural default" so preposterous as not even to have been raised by the Government. Yet the phantom "procedural default" finding was necessary because otherwise all the reasoning that applies to the reversal of the convictions under Counts One and Two would apply. Finally, to save the day, the Magistrate Judge, in a

---

"honest government" as the case may be. The statute refers to it in terms of honest government. How do you define it? Who is guilty, of what, to which you can scribe the term "dishonest government" or "honest government" and where is the harm and where is the resulting benefit.

They say they don't have to prove the harm and benefit. Well, members of the jury, there has to be some motive in somebody's mind, some motive to somebody before you can believe that they acted in dishonest and intentional manner and there has been none shown."

Vol. VII, pp. 82-83. (Mr. Jones for the Defense.)

"If you are going to be convicted on bad judgment, jail is going to be so full there is going to be people lined up to get in them. Simply because this involves political process– and I know all of us are suspicious about the political process. Oh, well, it's politics. Politics as usual. But that doesn't necessarily mean that it's corrupt. A lot of people get their jobs through political influence or political appointments, that doesn't mean they are corrupt. And I submit to you, members of the jury, that if you base this case on the evidence, it falls far short of establishing there was not an honest effort by Mr. Bryan to do the best job he could for the lottery and for the State of West Virginia."

Vol. VII, p. 88. (Mr. Jones for the Defense.)

triumph of legerdemain, conflated the honest services theory with the <u>unargued</u>, <u>never</u> <u>raised</u> property deprivation theory to produce the outrageous conclusion of "harmless error."

The proper rule, however, is still the rule set forth in *Mandel* as follows:

> Whatever the rule may be elsewhere, we hold that in a case in which the jury considers alternate theories of liability, we must reverse the convictions if either theory is an improper basis for punishment. United States v. Mallas, 762 F.2d 361, 363, n. 3 (4th Cir. 1985). The latest application of this rule that we find is in Mills v. Maryland, 56 U.S.L.W. 4503, 4506, 486 U.S. 367, 100 L. Ed. 2d 384, 108 S. Ct. 1860 (1988). In order not to apply the rule, we must be able to say "with a high degree of probability" that the jury did not rely on the legally incorrect theory. United States v. Alexander, 748 F.2d 185, 189 (4th Cir. 1985).

*United States v. Mandel*, 862 F.2d 1067, 1073-1074 (4th Cir. Md. 1988)

## V
### *The Need for Equity*

What makes the Magistrate Judge's Herculean efforts to sustain Mr. Bryan's conviction so objectionable is that  even at the time Mr. Bryan was being tried in District Court, there were many members of the Bar and editors at the *West Virginia University Law Review* who were outraged by this totally standardless prosecution. Undersigned counsel, who at the time was a justice of the West Virginia Supreme Court of Appeals, wrote a contemporaneous law review article entitled "Insider Trading Prosecutions under the Misappropriation Theory: New York's Joke on Heartland America," which was scheduled to be published as 96 *W. Va. L. Rev*. 873 (1994). Indeed, this article had been peer reviewed and set up in type! And,  because Mr. Bryan's and Mr. ReBrook's appeals were likely to be decided <u>before</u> the law review appeared in print, the law review editors sent advance copies to every member of the Fourth Circuit Court of Appeals. *See,* Exhibit 2 to original Petition for Writ of Error *Coram Nobis*.

Thereupon, federal prosecutors and/or the chief district judge exerted pressure on the President of West Virginia University, who in turn ordered the Dean of the Law School to forbid publication of the article. Because the article was sent to West Publishing before publication along with the rest of Volume 96 of the *W. Va. Law Review,* the article is still available on WestLaw with a statement that it was ordered removed from the Law Review. Lexis, which does not have the article, simply has a note that because of a "dispute over editing," the article was not published. That is totally incorrect: **The article was ordered removed in its entirety, and over the objection of such former *Law Review* editors-in-chief as Michael O. Callaghan**, who was then an assistant U.S. attorney!

Mr. Bryan's case is not one in which an ax murderer will go free to kill again based on some technicality; rather, Mr. Bryan's prosecution was seriously questioned at the time it was begun because of the lack of intelligible standards to guide citizen conduct and the *ex post facto* problems discussed at the beginning of this brief. At the end of the day, Mr. Bryan's actions showed a lack of judgment, but there was **no** evidence whatsoever that he profited personally from any of the actions for which he was placed on trial. Indeed, the evidence shows that he genuinely believed that Falgren Martin was the better advertising agency for the Lottery and he favored a contract for a lottery machine company that promised to build a manufacturing plant in West Virginia. Therefore, granting of the Writ on all counts is in the interest of fairness and justice as well as an exercise in the honest and principled application of criminal law precedent.

**WHEREFORE,** Petitioner prays that this Honorable Court overrule the learned Magistrate Judge's findings and conclusions with regard to Mr. Bryan's convictions under Counts Three and Five of the superseding indictment and order all fines and assessments levied

at the time of his conviction returned to him.

Respectfully submitted,
Elton E. Bryan
        by Counsel

/s/ *Richard Neely*___
Richard Neely
NEELY & CALLAGHAN
159 Summers St.
Charleston, WV 25301-2134
304-343-6500 voice
304-343-6528 fax
RNeely@NeelyCallaghan.com

CERTIFICATE OF SERVICE


I, Richard Neely, counsel for Petitioner, do hereby certify that I served the foregoing Objections to the Magistrate Judge's Findings and Conclusions upon the following members of the staff of the United States Attorney's Office for the Southern District of West Virginia, to-wit:

Hon. R. Booth Goodwin, II
United States Attorney
Hunter Paul Smith, Jr., Esq.
Assistant United States Attorney
Larry R. Ellis, Esq.
Assistant United States Attorney

by filing said document electronically in the office of the Clerk of the District Court on this 10th day of May, 2012.

/s/*Richard Neely*_____
Richard Neely
NEELY & CALLAGHAN
159 Summers St.
Charleston, WV 25301
304-343-6500 Voice
304-343-6528 Fax
RNeely@NeelyCallaghan.com