UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ELTON E. BRYAN,

       Petitioner,

v.                          Civil Action No. 2:10-1196
                               (Criminal No. 2:93-00089)

UNITED STATES OF AMERICA,

       Respondent.


<u>MEMORANDUM OPINION AND ORDER</u>


Pending is a petition for a writ of error <u>coram</u> <u>nobis</u> pursuant to 28 U.S.C. § 1651, filed October 6, 2010.


I.


This action was previously referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission to the court of her Proposed Findings and Recommendation ("PF&R") for disposition pursuant to 28 U.S.C. § 636.  On March 15, 2012, the magistrate judge filed her PF&R recommending that the petition be granted in part and denied in part.  On May 10 and May 14, 2012, respectively, the petitioner and the United States filed objections.

The magistrate judge has comprehensively recited the procedural and substantive posture of the case.  To summarize, on June 17, 1993, the United States filed a five-count second superseding indictment charging petitioner with (1) mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346 (Counts One and Two), (2) wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346 (Count Three), (3) securities fraud, in violation of 15 U.S.C. §§ 78ff and 78j(b) (Count Four), and (4) perjury before a grand jury, in violation of 18 U.S.C. § 1623 (Count Five).

On September 24, 1993, following what appears to have been an eight-day trial, the jury returned a verdict of guilty on all five counts.  On February 7, 1994, the presiding judge sentenced the petitioner to (1) 51-months imprisonment running concurrently as to each count, (2) a three-year term of supervised release, and (3) an order of restitution in the total amount of $120,000, with $60,000 being awarded respectively to the two victims in the case, namely, The Arnold Agency and International Game Technology.[1]

---

[1] The court found that restitution was appropriate as to these two victims, respectively, in the amounts of $1,531,000 and $461,808 as to Counts One and Two. It did not award the full amount of restitution inasmuch as civil litigation then pending in state court promised to more precisely ascertain the victims' losses.

As noted in the court of appeals' opinion adjudicating petitioner's direct appeal, the convictions on the first four counts "stemmed from Bryan's fraudulent manipulation of two government contracts and from Bryan's use of confidential, nonpublic information in the purchase of securities of companies doing business with the West Virginia Lottery."  United States v. Bryan, 58 F.3d 933, 936 (4th Cir. 1995).  Respecting Count One, the court of appeals additionally observed as follows:

> As a result of Bryan's and Gunnoe's misrepresenta-tions, the Purchasing Division ultimately approved the proposed $2.8 million advertising contract, which was signed by the Lottery and Fahlgren Martin on August 6, 1991. The Lottery immediately thereafter began sending checks through the mail pursuant to the terms of the contract. The mailing of these checks, in conjunction with Bryan's conduct in manipulating the award of the advertising contract, served as the basis for Bryan's first mail fraud conviction.

Id. at 938 (emphasis added).[2]

_____

[2] Count Four was based upon what has come to be known as the "misappropriation theory" of securities fraud liability.  The court of appeals concluded the theory was an insufficient basis for conviction.  See Bryan, 58 F.3d at 936 ("Our rejection of the misappropriation theory certainly should not be taken as approval of the kind of conduct of which Bryan was convicted, nor should it be perceived as evidencing a view that such conduct is not properly the subject of criminal liability.").  The petitioner did not pursue a writ of certiorari.  The Supreme Court, in reviewing a later decision by the United States Court of Appeals for the Eighth Circuit, subsequently concluded to the contrary.  See United States v. O'Hagan, 521 U.S. 642, 665 (1997) ("In sum, the misappropriation theory, as we have examined and explained it in this opinion, is both consistent with the statute and with our precedent.").

The court has reviewed this matter de novo.  The
United States' objections are first addressed, followed by those
of the petitioner.  Prior to addressing those objections, a
brief review of the governing standards is warranted.


A.   The Nature of the Writ and the Governing Standard


As noted by the magistrate judge, the coram nobis
request arises from the Supreme Court's decision in Skilling v.
United States, 561 U.S. 358 (2010).  In sum, the Skilling
decision adopted a limiting construction of the "honest
services" portion of the wire fraud statute, which would apply
as well to the mail fraud statute.  The Supreme Court concluded
that undisclosed self-dealing and conflicts of interest do not
satisfy the "honest services" branch of the statute, but that
bribery and kickback schemes did qualify thereunder as criminal
misconduct.  In assessing whether the circumstances here warrant
relief, the court first analyzes the nature of the writ and then
the standard governing its award.

1.  The Nature of the Writ

Our court of appeals has recently observed that coram
nobis relief is reserved only for the most compelling of cases:

4

> As a remedy of last resort, the writ of error coram nobis is granted only where an error is "of the most fundamental character" and there exists no other available remedy. United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir. 1988). The writ is narrowly limited to "'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" United States v. Denedo, 556 U.S. 904, 129 S.Ct. 2213, 2220, 173 L.Ed.2d 1235 (2009) (quoting United States v. Morgan, 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954)). Thus, the writ provides relief in cases where the error "rendered the proceeding itself irregular and invalid." United States v. Addonizio, 442 U.S. 178, 186, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (internal quotation marks and citation omitted) (superseded by statute on other grounds).

United States v. Akinsade, 686 F.3d 248, 252 (4th Cir. 2012);

Bereano v. United States, 706 F.3d 568, 576-77 (4th Cir. 2013)(noting the "circumscribed use of coram nobis" and quoting the Supreme Court's observation that "'judgment finality is not to be lightly cast aside; and courts must be cautious so that the extraordinary remedy of coram nobis issues only in extreme cases.'")(quoting United States v. Denedo, 556 U.S. 904, 916 (2009) (quoting also Carlisle v. United States, 517 U.S. 416, 429 (1996), which states "[I]t is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate." (internal quotation marks omitted))); see also United States v. George, 676 F.3d 249, 253 (1st Cir. 2012) ("The metes and bounds of the writ of coram nobis are poorly defined and the Supreme Court has not developed an easily readable roadmap for its issuance.  But the

Court has indicated that caution is advisable and that
'[c]ontinuation of litigation after final judgment . . . should
be allowed through this extraordinary remedy only under
circumstances compelling such action to achieve justice.'")
(citation omitted).


2.  The Governing Standard


As observed in the <u>Akinsade</u> decision, a petitioner
seeking <u>coram nobis</u> relief is obliged to demonstrate four
elements:

> "(1) a more usual remedy is not available; (2) valid
> reasons exist for not attacking the conviction
> earlier; (3) adverse consequences exist from the
> conviction sufficient to satisfy the case or
> controversy requirement of Article III; and (4) the
> error is of the most fundamental character."

<u>Akinsade</u>, 686 F.3d at 252.


In <u>Bereano</u>, the court of appeals addressed a
petitioner's <u>coram nobis</u> request relating to multiple 1994 mail
fraud convictions.  The petitioner alleged that <u>Skilling</u>
required vacatur of the convictions.  The United States conceded
that a <u>Skilling</u> error was present.  It further asserted,
however, that the petitioner could not have been convicted of
mail fraud under an honest services theory unless he was also
convicted under a separately alleged money and property fraud

6

theory as well.

The scheme to defraud alleged in Counts One through Eight of the Bereano indictment accused petitioner of:

> "(a) defraud[ing] his lobbying clients of money and property by means of false and fraudulent pretenses, representations and promises, by submitting to his lobbying clients bills which included false statements of expenses incurred . . . ; and
>
> (b) defraud[ing] his lobbying clients of their right to the loyal, faithful, honest, and unbiased service and performance of the duties of the defendant in his capacity as agent of said lobbying clients, free from willful omission, deceit, dishonesty, misconduct, fraud, self-dealing and conflict of interest . . . ."

Bereano, 706 F.3d at 570 (citation omitted).

The final paragraph of each count alleged a specific mailing that was used to perpetrate the fraud scheme.  After Count Eight was dismissed, the court instructed the jury, in part, as follows:

> [T]he court advised the jury . . . that "the first element . . . [the fraud scheme] means that the government must prove . . . that there was a scheme or artifice to defraud or to obtain money or property or the intangible right to honest services by means of false or fraudulent pretenses, representations or promises."  The court continued, explaining that "[a] scheme to defraud is any plan, device or course of action to obtain money or property or to deprive another of the intangible right of honest services."  Thus, in its explanation of the first element, and again in defining a "scheme to defraud," the court instructed the jury, using the disjunctive "or," that it was entitled to convict Bereano if it found him guilty under either the pecuniary fraud theory or the honest services fraud theory.

Id. at 573-74 (citations and emphasis omitted).  The jury
returned general guilty verdicts on all charges.  The
instructions and the verdict form did not disclose whether the
petitioner was convicted under the money and property fraud
theory, the honest services fraud theory, or both.

      The district court denied coram nobis relief.  It
reasoned that the petitioner was convicted not only under a
flawed honest services theory, but also an entirely proper money
and property fraud theory.  It consequently concluded that any
Skilling error was harmless beyond a reasonable doubt, opining
that "'[t]he core of the Government's case was the fraudulent
billing scheme, which is primarily about money.'" Id. at 575
(citation omitted).

      After reciting the four prerequisites for coram nobis
relief in this circuit, and noting that the parties agreed the
first three requirements were satisfied, the court of appeals
examined whether the alleged error was of the most fundamental
character.  It turned its attention to the jury verdict and the
evidence at trial, using the following standard:

      Pursuant to the Supreme Court's decision in Yates v.
      United States, when a general verdict of guilty rests
      on two alternative theories of prosecution, one valid
      and the other invalid, the verdict should be set aside
      if it is "impossible to tell which ground the jury
      selected." 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d

8

1356 (1957). As we later recognized in <u>United States v. Hastings</u>, however, an alternative-theory error is nevertheless subject to harmless error review. . . . [T]he reviewing court

> must attempt to ascertain what evidence the jury necessarily credited in order to convict the defendant under the instructions given. If that evidence is such that the jury must have convicted the defendant on the legally adequate ground in addition to or instead of the legally inadequate ground, the conviction may be affirmed.

<u>Id.</u> at 577-78; <u>see also</u> <u>United States v. Hastings</u>, 134 F.3d 235, 242 (4th Cir. 1998)(stating, in a direct review context, the quoted passage)).

Affirming the district court's denial of relief, the court of appeals in <u>Bereano</u> analyzed the matter as follows:

> Not only was the evidence of pecuniary fraud more than sufficient, it was necessarily accepted by the jury, as reflected in the verdict. Put succinctly, the jury could not have found Bereano guilty of mail fraud under either the honest services fraud theory or the pecuniary fraud theory without concluding that the alleged mailings -- false bills mailed to lobbying clients and the clients' payments mailed in satisfaction thereof -- were an integral part of the fraud scheme. In other words, no reasonable jury could have acquitted Bereano of pecuniary fraud for falsely billing his clients, but convicted him of honest services fraud for the same false billing scheme.

<u>Bereano</u>, 706 F.3d at 579.

B.    The United States' Objections


        The United States asserts that the magistrate judge

erred in recommending that the convictions on Count One and

Count Two be set aside.  Its position is similar to that taken

by the government in Bereano:

> The Findings and Recommendation does not confront the
> question that all of the cases judging similar
> alternative-theory situations hold to be controlling:
> did the jury necessarily find facts that constitute a
> mail fraud offense under a valid theory? In this case,
> where there is no factual basis for a conviction under
> either count other than the charged bid-rigging
> schemes whereby innocent, legitimate bidders were
> defrauded out of money, the answer to the question is
> "yes."

(U.S. Objecs. at 2-3).

        In assessing the accuracy of this assertion, the court

must review the trial record, a task considerably simplified by

the magistrate judge's thorough compilation.  In conducting the

analysis, the facts are taken in the light most favorable to the

United States.  See United States v. Jefferson, 674 F.3d 332,

341 n.14 (4th Cir. 2012).

        First, the potential jurors in the petitioner's case

were read the second superseding indictment.  They learned that

the scheme to defraud alleged in Count One, as in Bereano,

involved two separate matters as follows:

> [Petitioner] did devise and intend to devise a scheme
> and artifice . . . (A), to defraud the State of West
> Virginia, [the] West Virginia Lottery commissioners,
> the purchasing division of the Department of
> Administration of the State of West Virginia, and the
> citizens of the State of West Virginia of his loyal,
> honest and faithful service as an employee . . . .;
> and, (B), to defraud a certain advertising agency,
> that is the Arnold Agency, of the money expended in
> preparing and presenting proposals for an advertising
> campaign in pursuit of a certain contract and to
> further defraud that agency of the award of that
> certain contract with the State of West Virginia.

(Tr. Trans. 4:8-9)).  They were additionally told of the similar

dual-forked scheme found in Count Two:

> [Petitioner] . . . did devise and intend to devise a
> scheme and artifice . . . (A), to defraud the State of
> West Virginia, the State of West Virginia Lottery, and
> the citizens of the State of West Virginia of his
> loyal, honest and faithful service as an employee . .
> . .; and, (B), to defraud certain gaming equipment
> companies of the money expended in preparing and
> presenting proposals in pursuit of a statewide lottery
> contract and further to defraud those companies of the
> award and of the income from that certain contract to
> be let by and on behalf of the West Virginia Lottery.

(Tr. Trans. at 4:19)).  The same duality is found in the United

States' opening statement, as more fully set forth in the PF&R

at page 21.

        At volume 4, page 23, of the trial transcript, the

United States adduced evidence from Linda Arnold of the Arnold

Agency respecting the efforts devoted by her to the bid process

and the failure to receive the advertising contract.  The

magistrate judge recites similar testimony from Kerry Reppert, a

sales manager with International Game Technology, respecting the video lottery contract.  (<u>See</u> PF&R at 53-55).

The same theme concerning the harm visited upon the two victims continued into the United States' closing argument:

> Ladies and gentlemen, what's wrong here? This —— on the outside this bid process appeared to be a legitimate bona fide state bid process. On the inside there is a little secret track running all down there. In other words, it is something other than what it appears to be. That is fraud.
>
> <u>Who suffered because of these frauds? The Arnold Agency? Obviously. IGT? Obviously. The State of West Virginia and the Lottery Commission?</u>

(Tr. Trans. 9:60 (emphasis added)).

Following closing arguments, the court instructed the jury.  It not only provided the common instructions for mail fraud offenses but specifically drew the jury's attention to the second superseding indictment at multiple points.  (<u>See</u>, <u>e.g.</u>, Tr. Trans. 9:95; 9:98; 9:104).  The court additionally provided the jury a copy of the charging instrument and encouraged the jurors "to compare it with the charges and the proof in the case." (Tr. Trans. at 95).  It then tied the instructions to the second superseding indictment:

> First, the government has to prove to you that the defendant knowingly devised or knowingly participated <u>in a scheme or artifice to defraud as is set forth in counts one and two of the indictment</u>.

(Tr. Trans. 9:97 (emphasis added)).   The court also defined the words "scheme" and "artifice" as "includ[ing] any plan or course of action intended to deceive others and to obtain by false or fraudulent[] pretenses money or property from the person or organization so deceived," adding that "the terms 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."  (Tr. Trans. at 103).

        The following two observations are apparent from the record.  First, from jury selection to deliberations, the fraud visited upon the Arnold Agency and International Game Technology was front and center.  Second, the petitioner was convicted on Count One and Count Two, as the court of appeals noted, based upon his "fraudulent manipulation of two government contracts." United States v. Bryan, 58 F.3d 933, 936 (4th Cir. 1995). Indeed, pursuant to the body of evidence as to each Counts One and Two, it was only by virtue of the acts of the petitioner that served to defraud the two victims of pecuniary interests that the petitioner thereby deprived the state agencies of his honest services.  When those considerations are filtered through the Yates harmless error analysis, the appropriate result readily materializes.

In light of Skilling, it was error to submit the honest-services prong of Count One and Count Two to the jury. At the same time, the jury, in these bid-rigging schemes, also then had under consideration a separate, and entirely valid, run-of-the-mill property fraud branch in both Count One and Count Two respecting the victimization of The Arnold Agency and International Game Technology.  It was only by defrauding these victims that the honest services denial arose in the first place.  Under these circumstances, the court must conclude that no reasonable jury could have acquitted the petitioner of property fraud for victimizing The Arnold Agency and International Game Technology but convicted him of honest services fraud for the same bid-rigging schemes.  Beyond a reasonable doubt, the Skilling error was harmless.

Coram nobis is reserved for those extraordinary cases warranting equitable intervention to achieve justice.  Here, the jury clearly found bid rigging to have occurred.  In so finding, it necessarily also found the rigged bid schemes to have successfully defrauded the Arnold Agency and International Game Technology.  As in Bereano, an error of the most fundamental sort is absent from this case.  The petitioner cannot demonstrate that the ends of justice will be served by granting the extraordinary relief requested.  The court consequently

declines to upset these longstanding convictions under Counts One and Two.

C.   The Petitioner's Objections

        The court next considers petitioner's objections.  The petitioner asserts error in the magistrate judge's recommended conclusion that he procedurally defaulted, without a curative showing of cause and prejudice, any claims he makes respecting the integrity of either the Count Three or Count Five conviction.  Having considered the objections, the court concludes they are not meritorious in light of the thorough analysis conducted by the magistrate judge at pages 140 to 161 of the PF&R.

II.

        Based upon the foregoing discussion.  It is, accordingly, ORDERED as follows:

    1.   That the magistrate judge's PF&R be, and it hereby is, adopted and incorporated herein except insofar as otherwise stated above respecting the analysis of Count One and Count Two; and

2.     That this action be, and it hereby is, dismissed and
       stricken from the docket.

The Clerk is directed to transmit a copy of this
written opinion and order to counsel of record and any
unrepresented parties.

ENTER: December 19, 2013

John T. Copenhaver, Jr.
United States District Judge